IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CENTRAL LABORERS' PENSION FUND, SOUTHERN ILLINOIS LABORERS' WELFARE FUND, SOUTHERN ILLINOIS LABORERS' ANNUITY FUND, CENTRAL LABORERS' PENSION SUPPLEMENT, ILLINOIS LABORERS' AND CONTRACTOR'S JOINT APPRENTICESHIP TRAINING TRUST FUND, SOUTHERN ILLINOIS LABORERS-EMPLOYERS  COOPERATION AND EDUCATION TRUST, SOUTHERN ILLINOIS CONSTRUCTION ADVANCEMENT PROGRAM,   SOUTHERN ILLINOIS LABORERS' WORK DUES, SOUTHERN AND CENTRAL ILLINOIS LABORERS' VACATION FUND, SOUTHERN ILLINOIS LABORERS' POLITICAL LEAGUE, LABORERS' LOCAL 773, LABORERS' LOCAL 1197 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 3:20-cv-00419 |
| | ) |
| ROLLIE EXCAVATING & CEMENT FINISHING, INC | ) ) ) |
| Defendant. | ) ) |

## **COMPLAINT**

Now come plaintiffs, Central Laborers' Pension Fund, Southern Illinois Laborers'

Welfare Fund, Southern Illinois Laborers' Annuity Fund, Central Laborers' Pension Supplement,

Illinois Laborers' and Contractor's Joint Apprenticeship Training Trust Fund, Southern Illinois

Laborers-Employers  Cooperation  and  Education  Trust,  Southern  Illinois  Construction

Advancement Program, Southern Illinois Laborers' Work Dues, Southern and Central Illinois

1

Laborers' Vacation Fund, Southern Illinois Laborers' Political League, Laborers' Local 773, and Laborers' Local 1197 by and through their attorney, Letitia B. Wiggins of Wiggins Law, LLC, and for their complaint against the defendant, Rollie Excavating & Cement Finishing, Inc., state as follows:

JURISDICTION AND VENUE

1.      This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), as amended 29 U.S.C. §1145.

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

3.      Venue is based upon 29 U.S.C. §1132(e)(2) in that defendant's principal office is located at 2646 E. Illinois Hwy 15, Woodlawn, Jefferson County, Illinois.

PARTIES

4.      The plaintiffs, Central Laborers' Pension Fund, Southern Illinois Laborers' Welfare Fund, Southern Illinois Laborers' Annuity Fund, Central Laborers' Pension Supplement, Illinois Laborers' and Contractor's Joint Apprenticeship Training Trust Fund, Southern Illinois Laborers-Employers Cooperation and Education Trust, Southern Illinois Construction Advancement Program, Southern Illinois Laborers' Work Dues, Southern and Central Illinois Laborers' Vacation Fund, Southern Illinois Laborers' Political League, Laborers' Local 773, and Laborers' Local 1197 are employee benefit funds (hereinafter "Funds") administered pursuant to the terms and provisions of the Declarations of Trusts creating said Funds and are required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, and ERISA (as amended), 29 U.S.C. §§1001 *et seq*.  The place of

2

business of plaintiffs is Central Laborers' Pension, Welfare, and Annuity Funds, 201 North Main Street, Jacksonville, Morgan County, Illinois. The Central Laborers' Pension, Welfare, and Annuity Funds are the collection agents for the Funds.

5.      Defendant, Rollie Excavating & Cement Finishing, Inc., is an Illinois corporation and an "employer" and "party in interest" as those terms are defined by 29 U.S.C. §1002(5) and §1002(14)(c) of ERISA.

BACKGROUND

6.      The Funds are funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the Laborers' International Union of North America (hereinafter "LIUNA") on behalf of employees of those same employers.

7.      Defendant entered into Collective Bargaining Agreements, Participation Agreements, and Declarations of Trusts with local unions affiliated with LIUNA pursuant to which defendant agreed to pay contributions on behalf of covered employees to the Funds.

8.      An authorized representative of defendant, Rollie Excavating & Cement Finishing, Inc., executed Addendum A on July 27, 2009, thereby biding defendant to pay contributions to plaintiffs for employees of defendant within the jurisdiction of plaintiffs. It is attached hereto as **Exhibit "A."**

9.      Defendant has not given written notification of its intent to terminate the agreement referenced in Exhibit A. As such, said agreement remains in effect.

10.     Exhibit A is Addendum A to the Agreement between the Associated General Contractors of Illinois, Egyptian Contractors Association, Southern Illinois Builders Association

and Southern and Central Illinois Labors' District Counsel Covering Highway/ Heavy & Utility

& Building Construction in Local #773 and Local #1197. A copy of which is attached hereto as

**Exhibit "B."**

11.     Exhibit B states in pertinent part:

"Section N.  The Employers and Union hereby agree to be parties to and to adopt

and be bound by the terms and provisions of the Agreement and     Declarations of Trust

establishing Central Laborers' Pension Fund, Southern Illinois Laborer's and Employers' Health

& Welfare fund, Southern Illinois Laborers' & Employers' Annuity Fund, Illinois Laborers' &

Contractors Training Trust Fund, Vacation fund and Egyptian Builders and Organized Labor

Together (EBOLT) Substance Abuse Screening Trust Fund."

12.     Defendant has not given written notification of its intent to terminate the

agreement referenced in Exhibit B.  As such, said agreement remains in effect.

13.     The agreements in Exhibit A and Exhibit B bind defendant to the Agreement and

Declaration of Trust Creating and Restating Central Laborers' Pension Fund. Article VI Section

10 of Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension

Fund, attached hereto as **Exhibit "C"**, states in pertinent part:

"Section 10.    AUDITS AND THE COSTS THEREOF.  The Trustees shall have
the authority to audit the records of the Employer as described in Article IV,
Section 8, for the purposes of determining the accuracy of contributions to the
Pension Fund.  In the event it becomes necessary for the Trustees to file suit
and/or otherwise retain legal counsel to enforce their authority to perform an
audit, the Employer shall be liable for all reasonable costs incurred including
court fees, attorneys' fees, filling fees, audit cost, and any other expenses actually
incurred by the Trustees in the course of the action, without regard to whether the
Employer did or did not owe delinquent contributions.

In the event an audit determines that there are no delinquent contributions due the
Fund, other than in situations as noted in the above paragraph, the Fund shall pay

4

the entire Audit Cost.  In the event the audit determines that there are delinquent contributions due the Fund which were intentionally not paid by the Employer, the entire Audit Cost shall be assessed against the Employer. Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by the bank or other institution on which it is drawn and shall include non-payment due to lack of funds on the part of the Employer.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed a proportion of the audit costs, if any, based upon a formula which shall be set from time to time by the Trustees in their    discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.

14.    The Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension Fund, Article IV Section 8, attached hereto as Exhibit C, states in pertinent part:

"Section 8. DUTY TO COOPERATE.   All Trustees, all directors, officers, employers, employees/participants or other representatives of any Employer Association or Union party to this Trust Agreement shall be required to assist and cooperate with authorized representatives of the Fund, it's attorneys, auditors, and other authorized representatives in the prosecution of claims for or against the Fund.

Specifically, an Employer shall provide to the Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the following information:

a)    All cash disbursements journals, general ledgers, or other documents, including check registers or canceled checks if necessary, showing cash disbursements.

b)    All individual payroll records including certified payrolls where required on particular projects, including any applicable W-2's/W-3's.

c)    All time records which are the basis of the above-mentioned payroll records.

d)    All state unemployment tax returns.

e)    All union or fringe benefit fund reports showing contributions paid to all

5

entities or employees for fringe benefits or dues.

f)      All other relevant records which would tend to show the Employer's compliance with the terms of the Trust, including, if requested, records of project locations and records showing particular projects on which employee' time has worked.

Further, in the event no time records or records of hours worked are available which indicate whether such hours are straight time or overtime, all hours paid shall be deemed to have been paid at straight time for the purpose of computing contributions owed."

15.     Plaintiffs made a demand upon defendant to audit its records subject to Article IV Section 8, of the Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension Fund pursuant to the authority in Article VI, Section 10 of the Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension Fund.

16.     Defendant breached the provisions of ERISA, the collective bargaining agreements, the Participation Agreements, and the Declarations of Trusts by failing to participate in an audit, pursuant to Article VI, Section 10 of the Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension Fund, which provides the Trustees with the authority to audit the records of the Employer for the purposes of determining the accuracy of contributions.

17.     Despite plaintiffs demand that defendant perform its statutory and contractual obligations with respect to participating in an audit to ensure that the proper contributions are being made correctly, defendant has failed and/or refused to do so.

18.     Under Article VI, Section 10 of the Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension Fund the Fund is entitled to all reasonable costs incurred including court fees, attorney's fees, filling fees, and any other expenses actually

incurred by the Trustees in the course of the action, without regard to whether or not the Employer did or did not owe delinquent contributions.

WHEREFORE, plaintiffs request the following relief:

A.     For an Order declaring that defendant participate in an audit pursuant to Article IV Section 8 of the Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension Fund;

B.     That plaintiffs be awarded all reasonable costs incurred including court fees, attorney's fees, filling fees, and any other expenses actually incurred by the Trustees in the course of the action, pursuant to Article VI, Section 10 of the Agreement and Declaration of Trust Creating and Restating Central Laborers' Pension Fund;

C.     For such other legal or equitable relief as the Court deems appropriate.


By: / s/ Letitia B. Wiggins
     Letitia B. Wiggins
     Wiggins Law LLC
     #6315836
     P.O. Box 427
     301 South Jackson St.
     McLeansboro, IL 62859
     wiggins@wigginslawllc.legal

Attorney for the plaintiffs

## ADDENDUM A
## SCHEDULE OF WAGES, FRINGES AND DEDUCTIONS
## LOCAL 1197
### EFFECTIVE APRIL 1, 2014

The undersigned parties agree that Addendum A is part of Article 7, wages, showing distribution of same, of the Agreement between The Associated General Contractors of Illinois, Southern Illinois Builders Association, Inc., Southern Illinois Builders Association and the Southern and Central Illinois Laborers' District Council, Laborers' Local 1197, and the Laborers' International Union of North America for the territory covered by Laborers' Local 1197 as defined in Article 4, Territory. Covered for work defined as **Building**, Effective April 1, 2015 through March 31, 2016.

The schedule of wages, fringes and deductions follow:

| Building | | |
|---|---|---|
| Wages | | $26.03 |
| Health & Welfare | | $6.35 |
| Pension | | $6.79 |
| Annuity | | $4.78 |
| Training** | | $.80 |
| LECET | | $.30 |
| SICAP | | $0.10 |
| **Total Wage Package** | | **$45.15** |
| Deductions: | Dues Check-off | $1.65 |
| | Vacation Fund | $1.35 |
| | LPL | $0.10 |

**Environmental Work: an additional ten ($.10) cents per hour training contribution shall be paid by contractors for each hour worked by Laborers that are performing asbestos abatement and removal, hazardous and toxic waste cleanup and removal and lead based paint abatement and removal on jobs identified in the bid documents as environmental projects. A premium of $1.00 per hour shall be paid to each employee performing the above mentioned work.

Effective April 1, 2015 $1.35 to be distributed (total package $46.50)

46

---

By signing this Memorandum of Agreement which has been negotiated by and between the Associated General Contractors of Illinois, Egyptian Contractors Association, Inc., Southern Illinois Builders Association (collectively "Employer Associations") and the Southern & Central Illinois District Council ("Union") and the Southern & Central Illinois Laborers' Local 773 and Laborers' Local 1197 (collectively "Union") the undersigned employer on behalf of its affiliated Local Unions, Including Laborers' Local 1197 and Local #773 and Local #197. By signing this Memorandum agrees to abide by all the Articles, stipulations and fringe this Memorandum herein through Local 1197 (collectively "Union") the undersigned employer of Agreement, any, amendments, extensions, or changes in this terms and conditions of the undersigned Employer also agrees to be bound by the terms and conditions of any, amendments, extensions, or changes in this Agreement that are agreed upon by the Union and the Employer Associations. Additionally, the undersigned Employer agrees to be bound by this Agreement conditions of all subsequent and successor agreements to this Agreement negotiated between the Union and the Employer Associations, unless the undersigned Employer notifies the Union in writing of its desire to terminate this Agreement or any subsequent agreement at least ninety (90) days but not more than one hundred twenty (120) days prior to the expiration of the respective agreement, further, said individual contractor agrees that notice served by the Union upon the Employer Associations and Mediation Service for reopening and Termination or commencement of negotiations shall constitute appropriate notice upon and covering the individual contractor signatory hereto for all purposes. In no event shall the Associations have an obligation to independently notify individual contractors.

**FOR THE COMPANY:**

Company Name: Rollie Excavating of Covered Laite &

Company Address: 2044 E Of Hwy 15

Street Address and/or PO Box

City Bedia no State: It Zip Code 62898

Telephone Number 618-735-9309

Fax Number 618-735-4303

Email Address: rollie_excavating @yahoo.com

Signed By: Kevin J Rollie  Date: 2-16-16

Printed Name and Title: Kevin Rollie (Pres)

**FOR THE UNION:**

The Southern and Central Illinois Laborers' District Council:

Clint D. Taylor, Business Manager
Processing Union Agent

Date: 2-16-16   Title President

47

AGREEMENT BETWEEN

THE ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS

EGYPTIAN CONTRACTORS ASSOCIATION INC.

SOUTHERN & CENTRAL ILLINOIS BUILDERS ASSOCIATION

AND

SOUTHERN & CENTRAL ILLINOIS LABORERS' DISTRICT COUNCIL

COVERING

HIGHWAY/HEAVY & UTILITY & BUILDING CONTRUCTION IN

LOCAL #773 & LOCAL #1197

EFFECTIVE: APRIL 1, 2019                    EXPIRES: MARCH 30, 2022

EXHIBIT

B

INDEX
LABORERS' LOCAL 773 & 1197

ARTICLE 1    DECLARATION OF PRINCIPLES ----------------------------------------    3
ARTICLE 2    UNION SECURITY----------------------------------------------------    4
ARTICLE 3    REFERRAL CLAUSE--------------------------------------------------    4
ARTICLE 4    TERRITORY COVERED-----------------------------------------------    4
ARTICLE 5    CLASS OF WORK-----------------------------------------------------    8
ARTICLE 6    MANAGEMENT RIGHTS----------------------------------------------    14
ARTICLE 7    WAGES-------------------------------------------------------------    14
ARTICLE 8    IN CASE OF DIFFERENT SCALES-----------------------------------    21
ARTICLE 9    NOTIFICATION OF NO WORK, INCLEMENT WEATHER
             OR EQUIPMENT BREAKDOWN
ARTICLE 10   WORK HOURS AND OVERTIME------------------------------------    22
ARTICLE 11   HOLIDAYS--------------------------------------------------------    24
ARTICLE 12   BUSINESS MANAGER & STEWARD---------------------------------    24
ARTICLE 13   ARBITRATIONS--------------------------------------------------    24
ARTICLE 14   JURISDICTIONAL DISPUTES--------------------------------------    25
ARTICLE 15   PAYDAY----------------------------------------------------------    26
ARTICLE 16   FAILURE TO PAY------------------------------------------------    26
ARTICLE 17   REMAINING ON THE JOB----------------------------------------    26
ARTICLE 18   LABORERS DISCHARGED OR LAID OFF---------------------------    26
ARTICLE 19   COMPENSATION INSURANCE ----------------------------------    26
ARTICLE 20   ICE WATER------------------------------------------------------    27
ARTICLE 21   REPORT IN CASE OF INJURY------------------------------------    27
ARTICLE 22   TOOLS AND SLICKERS------------------------------------------    27
ARTICLE 23   SUBCONTRACTOR-----------------------------------------------    27
ARTICLE 24   SAFETY----------------------------------------------------------    27
ARTICLE 25   MARKET RECOVERY---------------------------------------------    29
ARTICLE 26   ALCOHOL AND NON-PRESCRIPTION DRUGS----------------------    29
ARTICLE 27   SAVINGS CLAUSE-----------------------------------------------    32
ARTICLE 28   NO DISCRIMINATION--------------------------------------------    32
ARTICLE 29   ANNUAL EMPLOYMENT PHYSICAL-------------------------------    32
ARTICLE 30   COMPLETENESS OF AGREEMENT-------------------------------    33
ARTICLE 31   DURATION AND TERMINATION--------------------------------    33
ADDENDUM A – 1197 – HEAVY/HIGHWAY/UTILITY-----------------------------    35
ADDENDUM A – 773 - HEAVY/HIGHWAY/UTILITY------------------------------    36
ADDENDUM A – 773 – BUILDING-----------------------------------------------    37
ADDENDUM A – 1197 – BUILDING----------------------------------------------    38

DURATION OF AGREEMENT
APRIL 1, **2019** THROUGH MARCH 31, **2022**
HIGHWAY/HEAVY AND UTILITY CONSTRUCTION WORK & BUILDING WORK
Local #773 & Local #1197

## STATE OF ILLINOIS

This Agreement made and entered into by the Associated General Contractors of Illinois (AGCI), Egyptian Contractors Association, Inc. (ECA), and Southern Illinois Builders Association (SIBA) on the behalf of contractors who have so authorized them, and any other Employer who becomes signatory to this Agreement, hereinafter called the Employer, party of the first part, and the Southern & Central Illinois Laborers' District Council, and its affiliated Local Unions affiliated with the Laborers' International Union of North America, AFL-CIO, having jurisdiction in the counties enumerated in Article 4, hereinafter called the Union, Laborers' or the Organization, party of the second part.

It is agreed that the liability of the Employers who accept, adopt, or sign this Agreement, or a facsimile thereof, shall be several, and not joint, and the liability of the Laborers' Local Union, who accept, adopt or sign this Agreement or a facsimile thereof, shall be several and not joint.

## ARTICLE 1
## DECLARATION OF PRINCIPLES

All parties to this Agreement believe that a uniform Agreement, if adopted by all Employers and all Union(s), would further the interests of the construction industry, and further believe that such a uniform Agreement should contain the following eight principles:

1. That there shall be no limitation as to the amount of work an employee shall perform during his working day.

2. That there shall be no restrictions on the use of equipment, tools or appliances.

3. That there shall be no restrictions of the use of any raw or manufactured materials, except prison made.

4. That no person shall have the right to interfere with an employee so as to impede the progress of the work, during working hours.

5. That the foreman shall be the agent of the Employer.

6. That employees are at liberty to work for whomsoever they see fit, but that they shall demand and receive the wage agreed upon as hereinafter set out.

7. That the Employers are at liberty to discharge, for just cause, whosoever they see fit.

8. That in order to give the public the lowest possible construction cost, consistent with fair wages and fair conditions of employment for workers, jobs shall not be created to afford employment.

## ARTICLE 2
## UNION SECURITY

All present employees who are or become members of the Union shall remain members as a condition of their employment. All present employees who are not members of the Union and all employees who are hired hereafter, shall become and remain  members of the Union as a condition of such employment, after seven (7) days following the beginning of their employment or the effective date of this contract, whichever is later, as authorized in Section 8 (a) (3) of the Labor Management Relations Act of 1947, as amended, and Section 705 of the Labor Management Reporting and Disclosure Act of 1959. Upon written notice from the Union, notifying the Employer of the failure of any employee covered by this contract to complete or maintain his membership because of non-payment of dues and fees, the Employer shall within twenty-four (24) hours of such notice discharge said employee. Provided further, that no Employer or the Union shall discriminate against any employee to whom membership was not available on the same terms and conditions generally applicable to other members of the Union or if membership was denied the employee for reasons other than failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring membership. All parties recognizing that the Construction Craft Laborer is an apprenticeable craft and that all new members must make application through the apprenticeship program direct entry application or referral guidelines established by the Local Union.

## ARTICLE 3
## REFERRAL CLAUSE

The Union and the Employer recognize that the Union is in a position to aid the Employer in recruiting needed Laborers who can meet the standards of the trade and who can promote the efficiency and safety of the operations of the Employer, and shall use the facilities of the Union referral office to recruit job applicants exclusively. On all major projects over two hundred thousand dollars ($200,000), the contractor will notify the Union of the award of the project, the Contractor and the Union agree there will be a pre-job conference if either party so requests. Intentional disregard of this article will be considered a violation of this contract and be subject to the grievance procedures.

In order to maintain an efficient system of production in the industry to provide for an orderly procedure of referral of applicants for employment, and to preserve the legitimate interests of Laborers in their employment, the Employer and the Union agree to the following plan of referral of applicants for employment:

4

1. Employers shall have complete mobility of employees within the jurisdiction of each Local Union, provided they are members of that Local Union, subject to the Union's right to appoint a steward as provided in Article 12. The company must notify the Union as soon as possible as to the movement of the laborers from one project to another.

2. The Employer shall be allowed key men to include the second (2nd), fourth (4th) and sixth (6th) men employed. Any additional number of key men shall be determined at a pre-job conference or any agreement between the employer and the Business Representative of the Union. It is agreed that the Employer shall be free to move key men without restriction to and from the jurisdictions of Local #773 and Local #1197. The Employer shall notify the Union of its need for all other laborers. The Employer shall not recruit or hire applicants directly. A key man must be a member in good standing of one of the Local Unions affiliated with the Southern and Central Illinois Laborers District Council and must have twelve (12) months experience working as a laborer during the past five (5) years. Key men may be used on overtime work but at no time shall the number of key men exceed 50% of four and at no time shall the number of key men exceed the number of referred applicants from the Local Union on any given job or project.

3. Employers may request former Laborers for referral to a job or project, and the Union referral office shall refer said former Laborers to the job or project provided they are properly registered applicants in the referral office, are available for work at the time of the request, and have been employed by the requesting Employer under the terms of this or previous agreements within twenty-four (24) months prior to the request.

To be eligible for recall an applicant must have completed a certified ten (10) hour OSHA training course or industry equivalent within the past three (3) years.

4. The Employer retains the right to reject any job applicant referred. The Employer shall have the right to determine the qualifications of his Laborers and shall have the right to hire and discharge accordingly. Hiring of Laborers shall be on a non-discriminatory basis, and shall in no way be affected by Union or membership, by-laws, rules, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements.

5. Registration and referral of applicants shall be on a non-discriminatory basis, and shall in no way be affected by Union membership, by-laws, rules, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements. So that the employer, employee and the Union may plan for the next day's work, a list of employee referrals for the next day's work shall be made available upon request at the referral office by noon, or as soon as possible each day. Employers must call the Local Union's main office for all dispatches unless otherwise agreed to in a pre-job conference.

6. The Employer in requesting referrals shall specify to the Union (a) the number of employees required, (b) the location of the project, (c) the nature and type of

construction, demolition, etc. involved, (d) the work to be performed and (e) such other information as is deemed essential by the Employer in order to enable the Union to make proper referral of qualified applicants. All special requests shall be followed up in writing, by facsimile or company form.

7. The Union shall register and refer all applicants for employment covered by this contract on the following basis:

(a) The Union shall require all job applicants who have not previously registered to submit a resume in writing on forms of their experience and qualification, in order to determine their ability and whether they are qualified to perform the requisite work of the Laborers.

(b) The Union shall maintain lists which shall contain the names of applicants in the order in which they register for employment. The opportunity for new applicants to make application to the apprenticeship program shall be on a non-discriminatory basis. The hours of registration and the rules of procedure of registration and referral shall be posted where such notices are customarily posted including the office where referrals are made.

(c) The Union shall refer applicants in the order of their places on said list and by qualification. Any applicant who is rejected by the Employer to whom he was referred, shall be restored to his place on the list. When any referred applicant is actually employed on a job for more than three (3) days, such referred applicant's name shall be removed from said list until such time as his employment has been terminated at which time his name shall be placed at the bottom of the list. If a registrant, referred for employment in regular order, refuses to accept such referral or employment, his name shall be placed at the bottom of the list.

(d) Neither the Union, its agents, nor the referral office undertakes or assumes any obligation to locate or search for any applicant whose name appears on the registration or referral lists, if such applicant is not available when referrals are made.

(e) The Employer may request Laborers possessing special skills and abilities, in which case the Union shall refer the first applicant on the list who possesses such special skills and abilities. The Employer shall confirm such request in writing to the Union within twenty-four (24) hours following an oral request.

(f) In the event that the referral facilities maintained by the Local Union are unable to fulfill the request of an Employer for qualified Laborers from within that Local Union, the Employer shall request Laborers from the District Council, and recall rights of Laborers from other Local Unions within the jurisdiction of Local #773 and #1197 will be allowed. Employers shall give Local Unions twenty-four (24) hours' notice when requesting referrals.

(g) A referred applicant shall be considered a Laborer only after being actually hired by the Employer. In case an Employer finds just cause to discharge a worker who has been employed and whose work has proved unsatisfactory, the Employer must inform such Laborer of the reason for such discharge.

8. In the event that any job applicant shall claim discrimination, he may, within ten (10) days following the occurrence of the event which constitutes the basis for his claim, file with the parties so charged, a written complaint clearly and specifically setting forth the discrimination charged. The other party shall be notified immediately and given a copy of the compliant. A tribunal consisting of a representative of the AGC of Illinois and a representative of the Union and impartial chairman appointed by the Employer and the Union jointly, shall consider the complaint and, within three (3) days, render a decision which shall be final and binding. The tribunal is authorized to make and issue procedural rules for the conduct of its business, but is not authorized to add to, subtract from or modify any of the provisions of this Article, and its decisions shall be in accord with the Labor Management Relations Act, as amended.

9. The parties to this contract shall post in places where notices to Laborers and applicants for employment are customarily posted, all provisions of this contract relating to referral procedures and Union security.

10. The Employer shall recognize the Union referral office in the geographical area in which the job or project is located. When a job or project is located within the geographical area of more than one Local Union, the determination of the number of Laborers to be procured through referral from offices of the respective unions, shall be made by agreement of the Business Representatives of the Union and the Employer at a pre-job conference provided that such agreement does not conflict with any state or federal law. In the event that the said parties are unable to reach an agreement on the question, the issue shall be submitted under the Grievance and Arbitration Article of this contract.

11. The Employer shall have and retain the full and unrestricted right to employ or not employ any job applicant procured, recruited or referred by the Union under this Article. The Employer retains the right to accept or reject, employ or not employ any job applicant referred, provided just cause is received by the Union in writing.

## ARTICLE 4
## TERRITORY COVERED

It is agreed that this contract shall cover all of the following counties in   Local #1197: Fayette, Jefferson, Effingham, Hamilton, Clay, Jasper, Crawford, Lawrence, Wabash, White, Richland, Marion, Wayne and Edwards; and the following counties in Local #773: Perry, Franklin, Jackson, Williamson, Saline, Gallatin, Union, Johnson, Pope, Hardin, Alexander, Pulaski and Massac at rates set forth in this contract.

## ARTICLE 5
## CLASS OF WORK

Section   A.   HEAVY/HIGHWAY,   UTILITY   CONSTRUCTION,   BUILDING
CONSTRUCTION and ENVIRONMENTAL WORK: It is agreed that this Agreement
shall apply to all Laborers on all construction work unless specifically exempted here
from, and all public construction improvements such as roads, subways, tunnels,
sewers, sewer disposal plants, streets, alleys, bridges, culverts, grade separations,
subdivisions, airports, canals, levees, pavements, watermains and purification plants,
pipelines with all connections and appurtenances thereto (located on  public right-of-
ways or easements thereto) locks, dams, golf courses, water towers, mine reclamation,
railroads, communication towers and any environmental cleanup on all of the above.

Highway Construction shall include the construction of roads, streets, alleys, sidewalks,
guard rails, fences, parkways, parking areas, airports, bridle paths, athletic fields,
highway bridges, grade separations involving highways, light construction, sewage and
waterworks improvements incidental to street and highway improvements. Work
connected and related to the installation of imbedded reflectors in new and existing
highways.

Heavy and Utilities Construction shall include railroad construction projects, heavy
construction and railroad bridges, heavy construction sewers and water mains, grade
separations involving a railroad, foundations, pile driving, piers, abutments, retaining
walls, viaducts, tunnels, subways, track elevation, elevated highways, drainage projects,
sanitation projects, aqueducts, irrigation projects, flood control projects, reclamation
projects, reservoirs, water supply projects, water power development, hydro-electric
development, transmission lines, pipe lines, locks, dams, dikes, levees, revetments,
channels, channel cut-offs, intakes, dredging projects, jetties, breakwaters, docks,
harbors, industrial sites (excluding paving operations), excavation and disposal by
contract of over burden and the loading by contract of all material from which the over
burden has been removed, including the operation maintenance and repair of all land
and floating plant, equipment, vehicles, and other facilities used in  connection with
serving the aforementioned work and services not including Building Construction.

Building Construction: Building Construction shall include the construction of building
structures, including modifications thereof, or additions or repairs thereto, intended for
use for shelter, protection, comfort or convenience. Building construction shall include
the demolition of and excavation and foundations for building construction and
refineries.

Environmental Work: The work jurisdiction of all laborers shall be recognized for work
connected with asbestos abatement and removal, hazardous and toxic waste cleanup
and removal, and lead base paint abatement and removal. Atomic remediation and
microbial remediation. Laborers' shall do all demolition and clean-up in relation to the
above-mentioned types of work.

8

It is further agreed that in addition to ordinary work, Laborers shall control the following classes of work:

1. Laborers shall serve as tenders for all crafts including masons, plasters, tuck pointers, cement finishers, carpenter and all other building and construction trades.

2. Laborers shall unload and distribute all materials for all other building and construction trades on all projects, including the operation of vehicles to distribute men and tools on all types of work. Mixing, conveying all materials used by masons, plasters, carpenters and other construction crafts whether done by hand or any other process. All Laborers' work in connection with unloading and distribution of all materials on the jobsite. Laborers shall also prepare and load out any and all materials to be taken away from the job site. Laborers' shall build scaffolding for masons, and plasters, and tend all other crafts.

3. All work in connection with concrete or any other material used for the same or similar purpose as concrete. Unless it is work that has been pre- dominantly performed by the Operator. Shoveling, puddling, raking, strike off by any method be it by hand or mechanical means. The operation of distribution of concrete such as a truck chute, pump hose, conveyor, crane and bucket or any other means. The mixing, handling, conveying, pouring, tamping, vibrating, gunniting and otherwise applying concrete on all construction. Pouring of centers of fireproofing purposes. Operation of all concrete mixers where no hoist is used. Cement handlers.

4. The setting, lining, and leveling of all forms, wood, iron or other material. Head form setter

5. The stripping and wrecking, Dismantling, cleaning, moving, oiling, stacking and loading out of all concrete forms. The digging and laying of conduit lines and sewer tiles, the removal of all form ties and the patching thereof.

6. Manning and servicing of all vibrators.

7. The application and all preparation work for the application of all mastics, curing compound, sealer or any other material, by any mode or method, for any purpose, to all concrete, asphalt or any other surface.

8. The Laborers shall do all work necessary to properly service the cement finisher, when the finisher is present on a project, the driving of all stakes for any purpose. The carrying and use of all forms and screeds.

9. All demolition work of any kind for any purpose. The raising and moving of all structures. The wrecking of building scaffolds and all structures. The cutting of all holes in masonry walls over three feet by seven feet (3' x 7').

9

10. Cutting off of concrete pile, and all Laborers' work pertaining to piling, Unloading, clean up, starter holes, and tending of the pile drivers.

11. All cleanup of any kind. The cleaning of all bathtubs and sinks. The cleaning of buildings and washing and cleaning of all windows.

12. All labor work to be done by Laborers on all machines. Swampers for tractors, trucks, draglines, cranes and ditching machines. All work pertaining to the dumping of all slip scrapers. Membrane curing spraying machine.

13. The laying, assembling of temporary gas, oil and waterlines and dismantling of same and all connections.

14. Laying of steel mesh and setting of center steel expansion joints. The Laborers shall handle and carry all reinforcing rods on all work covered by this Agreement in accordance with the Green Book decision dated August 2, 1920, amended December 11, 1924, and the agreement between the Laborers' and Ironworkers International Unions covering Southern Illinois dated November 2, 1962. All work on guard rails, temporary or permanent field fence and temporary or permanent chain link fence, delineators, guideposts, right-of-way and section markers, shall be assigned in accordance with the Chicago agreement with the Ironworkers' International Union covering such work dated 1956.

15. The placing of all reinforcement bars, mesh and all other reinforcement material in roads, streets, curbs, slope walls, driveways and alleys.

16. Blocking up and striking off of concrete and all mechanical strike-off.

17. All work of drill running and blasting, including running of wagon drills, mechanical pin pullers and small trenching machines with plow handles, walk behind or remote control, rollers, tampers and compactors.

18. Signal men in all construction work defined herein, including watchmen and guards. The wage scale as set forth in this Article does not apply to watchmen. The wage scale for watchmen will be determined at the pre-job conference.

19. Dirt spotters and all work related to grade checking. Hand grade operators. All work pertaining to grade checking including but not limited to eye levels, laser beam set up and alignment, GPS, Chain men and Rod men.

20. Laying, joining and pointing of all sewer tile and lines.

21. Destruction of all brush and trees by use of fans, curtains, chipping machines, accelerants, trimmers and stackers.

22. Handling, distributing and laying of all gas, oil and watermains.

23. Handling and firing of tar kettles.

24. All Laborers' work pertaining to asphalt, other than Operating Engineers, shall come under the jurisdiction of the Laborers. Asphalt rakers, Men on platform of asphalt plants and asphalt machines.

25. All flagmen, salamander tenders and sprinklers, water boys and men filling and distributing lights and lanterns, propane heaters and equipment related to heating and curing. The firing of boilers under fifteen (15) lbs. of pressure.

26. All types of gasoline buggies, power saws, concrete and asphalt saws, chain saws, gravel box men, chip spreaders and tending mechanical heaters and mechanical form tampers and hydro-platforms. Manning and operating of all power operated and hand chain saws.

27. Installation, wrecking, dismantling, and loading out of temporary road bridges.

28. All Laborers' work in connection with the distribution of all materials on the job site including solar projects.

29. The Laborers shall do all work necessary to properly service the cement finisher; the driving of all stakes; the carrying of all forms or screeds; including steel curb and gutter for sidewalk screeds to the point of installation. The operation of all hand operated screeds including power assisted screeds on heavy or highway work, and sidewalks that are not in connection with a building project.

30. All labor work in connection with the handling, erection and dismantling of all temporary cement and asphalt plant, rock, gravel, sand and other material bins, batch hoppers, weighmen, ticket writing except when such work is performed by a clerical employee, dumpers, level men, hooking, flagging and signaling on all machinery and other equipment on all work covered under the jurisdiction. of this Agreement.

31. The cutting and burning of all scrap and the use of all cutting torches and other cutting equipment used to perform the work covered under the jurisdiction of this Agreement including but not limited to demolition of material that will not be re-used.

32. The applying and preparation of mastics or other material, by any mode or method, for any purpose, to all concrete.

33. The unloading or handling of precast prestressed concrete to a stockpile will be the work of the Laborer. All Laborers' work on precast and prestressed concrete including drilling and grouting. Where power is used, the tying on of precast or prestressed concrete, preparatory to the final installation, will be the work of the Laborer. The actual setting of precast concrete for bridge decks will be a composite crew made up of laborers and carpenters.

34. The handling of all tarpaulins and the locking of divider boards in multi-batch trucks.

35. Railroad track work, right-of-way clearance, excavation, grading, sub-grading, blasting and compacting of right-of-way. Loading, unloading, stockpiling, handling and distribution of track and ties at point of installation. All burning or otherwise cutting of track. Setting of ties, placing, bolting, leveling and gauging of rails and all spiking, whether by hand or mechanical means. Placing and tamping of ballast by hand or mechanical means.

36. Construction and/or relocations of mainlines, shoe flys, siding, gradings, crossings, relocating of pipes and drainage and culverts connected with same and removal and replacing of all fences.

37. All work connected and related to the installation of embedded reflectors in new and existing highways.

38. Environmental work: On project designated in bid document all work connected and related to; asbestos abatement and removal, hazardous and toxic waste cleanup and removal, lead base paint abatement and removal.

39. All Laborers' work in connection with traffic control including but not limited to Maintenance, surveillance, the driving of vehicles, set up and removal.

40. All work connected with landscaping.

41. All work in conjunction with Green Construction including but not limited to any work for grey water, mulch beds retention ponds and solar construction within the jurisdiction of this Agreement.

42. Laborers shall perform all the following: demolition work, hand placement of riprap, sign installation and supports, hand shoveling, raking, hand roller operator, vibrator, tampers, hand blades, cutting torches, fire watch, welding, pressure washing, air track operator and drill man, pumpcrete assembly man, core driller operator, eye levels, laser beam alignment, hydro seeder man, grade checking, batch truck dumping, sand blasting, asphalt sealing, straw blowing, laying, handling, distributing and assembling of all; temporary and permanent drains, culverts and pipes, pipe grade man, manhole erectors, the handling, distributing and assembling of all temporary and permanent sewer and water lines, dynamite and powder man, all deck hands on boats and barges. Non-self-propelled concrete saws, hand digging, pavement breakers. Jackhammer men.  All submarine cable, Concrete saws, Membrane spraying machine, generators. The operation of water pumps four" (4) and under. All Laborers' work in connection with dewatering systems. Digging of trenches, piers, foundations, and manholes and holes etc. Digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, caissons, dams, dikes and cofferdams. Underpinning and shoring. Work in excavation preparation. Clearing for pools and right of way for construction. Laborers in factories

and mills. Laborers in shipyards, material yards, junk yards, Asphalt plants, cemeteries. Driller, blaster, signal men and laborers in quarries, crushed stone yards, sand and gravel pits. Setting up of batch plants and manning of all hoppers, including cement hoppers. All work pertaining to aggregate hoppers and batching men on batch plants, both manual and automatic. All submarine cable. Construction of sewer, shafts, tunnels, subways, dams, dikes, cofferdams, culverts, and flood controls.

43. Certain Laborers shall be classified as "Concrete Specialists", the Concrete Specialists shall perform all work assigned them relating to but not limited to: the pouring, striking off, finishing of all concrete surfaces, also concrete rubbing, edging, forming up, driving stakes, bull floats, etc.

Concrete Specialists shall have mobility to move throughout the jurisdiction of Local #773 & #1197 provided this movement is restricted to the work of the Concrete Specialist.

Concrete Specialists agree to furnish their own small hand tools, such as float and trowel and the Contractor agrees to furnish any large tools and special edgers required, also rubbing stones with handles, brushes, buckets and cork floats or rubber floats and respirators according to state and federal law.

44. The Employer shall determine when the above classifications are needed. It is agreed that the jurisdiction of work covered by this Agreement is that provided for in the charter grant issued by the American Federation of Labor to the Laborers' International Union of North America.

45. In addition to the foregoing, all work included in the Laborers' "Manual of Jurisdiction."

Section C. This Agreement covers the contractor's operations on the job site and the contractor's operations of a temporary nature in specific support of the job site project, not to include permanent facilities nor the contractor's home office facilities of whatever nature, and shall not include professional engineers, engineering or clerical employees, guards, timekeepers, parts men, scale men (where clerical work is required in conjunction with the operation of the scales), superintendents, assistant superintendents or any supervisors in charge of any class of labor. None of the employees exempted in this paragraph shall be required to be members of any union nor shall they perform any Laborers work.

Section D. Should there be any tunnel work requiring caissons or if men required to work under compressed air conditions, then all classifications of work, and all wage scales covered by the current Collective Bargaining Agreement shall apply.

Section E. Flexible Work Assignments. Whenever the Employer deems it required by circumstances on a particular job or project, and after consultation and concurrent with

the District Council Business Manager, Laborers shall perform all work as may be assigned by the Employer.

## ARTICLE 6
## MANAGEMENT RIGHTS

Section A. It is understood and agreed that the direction of the working forces and the right to hire, discharge for just cause, suspend, transfer, lay off, promote, demote or relieve employees of their duty shall be vested exclusively in the Employer.

Section B. The Employer shall have the right to determine the number of Laborers any certain operation or portion of work shall require.

## ARTICLE 7
## WAGES

Section A. It is understood and agreed that the hourly rate of pay shall be as set forth in Addendum A as follows: effective April 1st, 2019 $1.35 per hour increase, effective April 1st, 2020 $1.45 per hour increase, effective April 1st, 2021 $1.50 per hour increase.

The Concrete Specialists shall receive the combined total of wages and fringe benefits contained in the Illinois Prevailing Wage Act for the appropriate county and classification of work in which the Concrete Specialist is used.

Laborers that are performing asbestos abatement and removal of hazardous and toxic waste cleanup and lead base paint abatement on jobs identified in the bid documents as environmental projects shall receive $1.00 per hour above the regular rate of pay.

Where the Employer elects to designate a Laborer Foreman, he shall receive forty-five cents (.45) per hour above the Laborers' wage rate.

Where the Employer elects to designate a Laborer General Foreman, he shall receive one dollar (1.00) per hour above the Laborers' wage rate. Building work employing ten (10) or more laborers shall have a general Foreman appointed by the Employer.

Premium pay for high-time on slip-form work on chimneys or stacks, silos, and storage elevators will begin with a free fall of twenty-five (25) feet and shall be twenty-five cents (.25) per hour above basic rate of pay from twenty-five (25) feet to fifty (50) feet free fall and above fifty (50) feet free fall rate of pay shall increase twenty-five cents (.25) for each twenty-five feet of free fall additional.

Section B. Central Laborers' Pension Fund. All Employers party to this Agreement agree to contribute to the Central Laborers' Pension Fund for each hour covered employees receive pay, a sum per hour as set forth in Addendum A to this Agreement.

**Section C.** <u>Southern Illinois Laborers' & Employers' Health & Welfare Fund.</u> All Employers party to this Agreement agree to contribute to the Southern Illinois Laborers' & Employer's Health & Welfare Fund for each hour covered employees receive pay, a sum per hour as set forth in Addendum A to this Agreement.

**Section D.** <u>Southern Illinois Laborers' & Employers' Annuity Fund.</u> All Employers party to this Agreement agree to contribute to the Southern Illinois Laborers' & Employers' Annuity Fund for each hour covered employees receive pay, a sum per hour as set forth in Addendum A to this Agreement.

**Section E.** <u>Illinois Laborers' & Contractors' Joint Apprenticeship and Training Trust Fund.</u> All Employers party to this Agreement agree to contribute to the Illinois Laborers' & Contractors' Training Trust Fund for each hour covered employees receive pay, a sum per hour as set forth in Addendum A to this Agreement.

**Section F.** <u>Laborers' and Employers' Cooperation and Education Trust Fund (LECET).</u> All Employers party to this Agreement agree to contribute to the Laborers' and Employers' Cooperation and Education Trust Fund (LECET), for each hour covered employees shall receive pay a sum per hour as set forth in Addendum A.

**Section G.** <u>Working Dues Check-off.</u> Upon receipt of a properly signed working dues check-off authorization form, each Employer shall deduct from the above wage rates and pay over to the Union a sum per hour for each hour for which wages are paid as set forth in Addendum A.

The Union shall indemnify, and hold harmless each Employer against liability in the event that it is determined in any board, court or tribunal of competent jurisdiction that such deductions and payments are improperly or illegally made. Local Unions will maintain current dues check-off authorization forms for each person referred to the Employer. Signatory contractors are entitled to view check-off authorization forms of workers they hire or can request copies of the same by mail.

**Section H.** Egyptian Builders and Organized Labor Together (EBOLT). Developed through the cooperative effort of both Labor and Management, the Egyptian Builders and Organized Labor Together (-BOLT) Substance Abuse Screening Trust Fund is firmly committed to the safe and efficient performance of work in the building and construction trades. Employers shall remit the contribution per hour, as listed in Addendum A, for each hour worked for bargaining unit employees. If a signatory Employer elects to include non-bargaining unit employees in the program, they may do so at the rate specified by EBOLT Trustees.

**Section I.** <u>Vacation Fund.</u> By signing this Agreement, the Employer agrees to an after-tax deduction as listed in Addendum A for each hour worked with overtime hours included at the straight time rate to be paid to the Vacation Fund.

Section J. <u>Voluntary Contributions to Laborers' Political League</u>. For work that is performed within the jurisdiction of Local #773 & Local #1197, the Employer shall, upon written receipt of a proper assignment executed by an employee, deduct the amount as listed in Addendum A for a voluntary contribution to the Laborers' Political League. This authorization shall be irrevocable for a period of one (1) year, or until the termination of the collective bargaining agreement in existence between the Employer and the Southern & Central Illinois Laborers' District Council and/or its affiliated Local Unions, whichever occurs sooner; this authorization shall automatically be renewed and shall be irrevocable for successive periods of one (1) year each, or for the period of each succeeding applicable collective bargaining agreement between the Employer and the Southern & Central Illinois Laborers' District Council and/or its affiliated Local Unions, whichever shall be shorter, unless written notice is given by the employee to the Southern & Central Illinois Laborers' District Council and the Employer not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year, or of each applicable collective bargaining agreement between the Employer and the Southern & Central Illinois Laborers' District Council and/or its affiliated Local Unions, whichever comes sooner. The Employer shall remit the amount so deducted monthly together with a list showing the names of the Laborers from whose pay deductions were made and the amount deducted.

Section K. HEAVY & HIGHWAY WORK IN <u>Local #773</u> - Industry Advancement Foundation (IAF), Egyptian Contractors Association, Incorporated. Within the boundaries of Local #773, the Employer shall contribute to the Industry Advancement Foundation of the Egyptian Contractors Association, Incorporated. In addition to the per hour wage rate, the employer shall contribute an amount per hour specified in wage Addendum A (Currently $.16 per hour) for hours worked by each employee covered by this agreement for the duration of this Agreement.

Section L. <u>AGC of Illinois Industry Advancement Fund.</u>

1. EMPLOYERs engaged ONLY in heavy/highway or utility work within the jurisdictions of Locals 773 and 1197 agree to pay the Associated General Contractors of Illinois Industry Advancement Fund (IAF) the sum of sixteen cents ($0.16) per hour worked for all hours paid at straight time or overtime to each employee working under this Agreement for the duration of this Agreement.

2. The contributions to the IAF shall be deposited each month, or at such other regular intervals as may be determined by the Association, to the depository designated by the Association. Such contributions shall be reported and sent to the depository designated by the Association on a form that contains other contributions. Failure of an EMPLOYER to comply with this Article shall be deemed a direct violation of the Agreement.

3. The activities of the IAF shall be determined by the Association and shall be financed from the payments herein provided for the advancement of the Heavy/Highway and Utility construction industry in the State of Illinois.

16

4. Upon request, the EMPLOYER hereby agrees to provide the designated representative of the Association its payroll records to determine compliance with this article.

5. The EMPLOYER and the Union agree that any action, including the filing of a law suit, by the Association to enforce this Article is not subject to any of the grievance/arbitration provisions of this agreement. If the Association files a lawsuit against an EMPLOYER to collect delinquent contributions under this Article, the EMPLOYER agrees that the Association shall be entitled to recover interest of five percent (5%) per annum on the unpaid or late-paid contributions and to recover attorneys' fees and cost.

Section M. BUILDING WORK IN Local #773 & Local #1197 - Southern Illinois Construction Advancement Program (SICAP): In addition to the per hour wage rate, the Employer shall contribute sixteen cents ($.16) cents per hour worked by each employee covered by this Agreement to the Southern Illinois Construction Advancement Program. The Employers signatory hereto agree to accept the terms of the Trust Agreement establishing the Southern Illinois Construction Advancement Program, its rules and regulations. Upon sixty (60) days written notification by the Employer Association to the Union, monetary increases can be made to Employer contributions to the Southern Illinois Construction Advancement Program. It is agreed that such increases shall have no effect on the current wage rate. The Employer Associations shall be limited to one such request per contract year other that the anniversary date.

Section N.  Trust Agreement.  The Employers and Union hereby agree to be parties to and to adopt and be bound by the terms and provisions of the Agreement and Declarations of Trust establishing Central Laborers' Pension Fund, Southern Illinois Laborers' & Employers' Health & Welfare Fund, Southern Illinois Laborers' & Employers' Annuity Fund, Illinois Laborers' & Contractors Training Trust Fund, Vacation Fund and Egyptian Builders and Organized Labor Together (E-BOLT) Substance Abuse Screening Trust Fund. All contributions as set forth in Addendum A shall be made in accordance with the provisions of the applicable Trust Agreement, which shall provide for joint administration of said Funds by an equal number of employee or Employer Trustees. All provisions of said Trust Agreements shall meet all the requirements of Section 302 of the Labor Management Relations Act  of  1947, as amended, and any other applicable laws.

The Trustees of the said Funds shall, among other things, have the authority to determine the type and amounts of benefits to be provided, and the rules and regulation governing entitlements to such benefits, provided, however, that the benefit plans to be established shall conform at all times to the applicable requirements of the Internal Revenue Service so as to insure the tax exempt status of the said Funds and the right of contributing Employers to treat the contributions to the Pension Fund as deductions for income tax purposes.

17

The failure of the Employer to contribute to the said Funds, as provided for herein, for the purpose of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages.

Section O. Notwithstanding any other provision in this Agreement, the Union may strike any Employer for refusal to pay wages and make contributions required herein after giving 48 hours' notice to said Employer.

Section P. Bond Requirements: Any Contractors doing business in the jurisdiction of Local 773 and Local 1197 that fail to pay benefits in accordance with the appropriate fund documents, shall obtain and maintain during the term of this Agreement and being renewed yearly an approved surety bond in the amount of fifty thousand dollars ($50,000) to guarantee their employees working under this Agreement the payment of wages and fringe benefits, including Pension Plan, Health and Welfare Plan, Annuity Fund, Joint Apprenticeship and Training Fund, Laborers' Political League, Egyptian Builders and Organized Labor Together (EBOLT) Trust Fund, Industry Advancement Fund (IAF), LECET Fund, Supplemental Dues Check-off, and Vacation Fund. The Employer shall be responsible for payment of the Bond premium covering the term of this agreement and shall be renewed yearly. The original copy of the Bond shall be filed with the Union, with copies of said Bond to be filed with the various trust funds to which it shall be applicable. Such Bond shall provide that it shall not be canceled without a thirty (30) day's prior written notice to the Union. The Union shall apply the above requirements on a uniform basis.  This Surety Bond shall be revoked after sixty (60) day delinquency.

In the event of failures, defaults or refusal of the Employer to meet his obligations to their employee of the Pension Plan, Health and Welfare Plan, Annuity Fund, Joint Apprenticeship and Training Fund, Laborers' Political League, Egyptian Builder and Organized Labor Together (EBOLT) Trust Fund, Industry Advancement Fund (IAF), LECET Fund, Supplemental Dues Check-Off, and Vacation Fund after written notice to the Employer and bonding company, may file claim to obtain payment, costs and reasonable attorney's fees there from of the applicable surety bond.

Failure of an Employer to obtain and maintain an effective surety bond as required herein, or failure and default by an Employer of payment obligations covered by this Agreement in excess of the amount of the surety bond may, at the option of the Union, be declared by the Union a gross breach of this Agreement in consequence of which the Union shall have the right to resort to economic and other sanctions against the said Employer. Bond shall remain in full force and effect for a period of one (1) year or until payment of wages and fringe benefits including Pension Plan, Health and Welfare Plan, Annuity Fund, Joint Apprenticeship and Training Fund, Laborers' Political League, Egyptian Builders and Organized Labor Together (EBOLT) Trust Fund, Industry Advancement Fund (IAF), LECET Fund, Supplemental Dues Check-off, and Vacation Fund payments have been satisfied.

Section Q. <u>Construction Craft Laborer Apprentice.</u>

1. The term of Apprenticeship shall be approximately three (3) years and (3000/6000 Hours) of on the job training, excluding time spent in related instruction.

When credit is granted, the remaining term of apprenticeship shall be reduced. The term may also be reduced by the committee for individual apprentices demonstrating exceptional skill and technical knowledge competencies in any module or major component of the work process.

2. Probationary period. The first seven hundred fifty (750) hours of employment for all entering apprentices, without respect to any advanced standing awarded, shall constitute a probationary period which shall be a part of the term of apprenticeship. During the probationary period the Apprenticeship Agreement may be terminated by the committee or apprentice without stated cause or hearing. After the probationary period, the agreement may be cancelled at the request of the apprentice, or may be suspended, cancelled or terminated by the sponsor, for good cause, with due notice to the apprentice and a reasonable opportunity for corrective action, and with a written notice to the apprentice and to the registry agency of the final action.

3. Apprentice Wages and Wage Progression, Apprentices shall be paid a progressively increasing schedule of wages consistent with skills and knowledge acquired. The rate for each period of the Apprenticeship is expressed as a percentage of the skilled Construction Craft Laborer Journey worker rate specified in the Collective Bargaining Agreement. The approximate time interval for each period is indicated' it may be adjusted for individual apprentice's progress. Such adjusted periods may be made only by committee action.

4. The Schedule that follows provides for three (3) equal periods of 3,000/6,000 hours of work and training each:

| | |
|---|---|
| First year | 75% of the journey worker rate<br>Including full benefits. |
| Second year | 85% of the journey worker rate<br>Including full benefits. |
| Third year | 95% of the journey worker rate<br>Including full benefits. |

Apprentice must work a minimum of 1000 hours each year to advance to the next years' pay rate.

In no instance will the starting rate be less than the hourly minimum of the Fair Labor Standards Act. The apprentice rate shall be based on the appropriate percent of the journeyworker rate of the collective bargaining agreement.

5. Full fringe benefits as stated in the collective bargaining agreement will be paid on all current and future apprentices enrolled in the apprenticeship program. Employers will be required to make fringe benefit contributions upon employment of any apprentice.

6. Ratio, Supervision, Safety

a.     One (1) journey worker to one (1) apprentice on a two (2) worker job;
b.     One (1) apprentice to two (2) journey workers on a three (3) worker job;
c.     Two (2) apprentices to four (4) journey workers on a six (6) worker job;
d.     Three (3) apprentices to nine journey workers on a (12) worker job;
e.     Four (4) apprentices to twenty-five (25) journey workers;
f.     Five (5) apprentices to thirty-five (35) journey workers;
g.     Six (6) apprentices to fifty-five (55) journey workers;
h.     One (1) apprentice to twenty (20) journey workers thereafter.

Apprentices shall work under the supervision of competent and qualified journey workers on the job. Instruction in safety and safe work practices will be a part of job instruction in addition to that included in related instruction and in special off-job courses.

7. The work of the Construction Craft Laborer occupation is diverse; therefore, care must be taken by the JATC to ensure that the families of tasks and groups of job skills are organized so that the JATC can track the experience and training received by the apprentice. Appendix A is the schedule of work progress.

While modifications may be required from time to time to accommodate the type of construction work available in the area, apprentices are encouraged to gain the experience in all of the commonly accepted major industry divisions. The three industry divisions are: (a) environmental remediation, (b) building construction, and (c) heavy/highway construction. It is to be noted that the skills used are not necessarily discrete to one grouping.

The JATC will identify those skill groups most important to success at the journey worker level in the locality in which the program operates. The JATC will plan rotation and off- site instruction to meet those particular requirements.

Participation by the apprentice in off-job and skill center manipulative skill training is particularly relevant to rounding out the skills acquired as noted above. It is the only viable alternative in dangerous, hazardous work. Moreover, the time spent in this form of tutoring skills is almost totally 100% training time as contrasted with the reverse in normal work time with its focus on productive output. It is for this reason the JATC may give added value to the time spent in such controlled training environments when determining the completion of a major component of the work process and group of skill modules.

Section R. Changes. All wages and contributions shall be uniform for all Local Unions covered by this Agreement. Should the Union desire to distribute any part of the negotiated wage increase to the negotiated funds in different amounts than specified in Wage Addendum A, it may do so upon sixty (60) days written notice, prior to the effective date of the increase of April 1, **2019** and April 1, **2022** provided that under no circumstances can monies be deducted from the basic labor rate, as such is prohibited by the Illinois Department of Labor. All such requested changes shall be accompanied by appropriate justification and shall be subject to agreement by the Employer Associations. Upon agreement being reached, an Addendum as well as Illinois Prevailing Wage Forms shall be jointly signed and executed by the parties.

## ARTICLE 8
## IN CASE OF DIFFERENT SCALES

The party of the second part agrees they shall use all honorable and peaceful means to see that all work is done at the scale of wages not less than those set forth in this Memorandum of Agreement.

## ARTICLE 9
## NOTIFICATION OF NO WORK, INCLEMENT WEATHER
## OR EQUIPMENT BREAKDOWN

Section A. Notification of No Work. The foreman or his authorized representative shall notify the steward thirty (30) minutes before quitting time when there will be no work on the following day or shift. Men ordered out at the commencement of the day or shift shall receive two (2) hours pay. Men ordered out and put to work shall receive four (4) hours pay. Men worked past four (4) hours shall receive eight (8) hours pay with the exemption of Article 9 Section B of this Agreement. If for any reason men are ordered to report at noon or the middle of the shift, they shall receive four (4) hours pay.

Section B. Inclement Weather or Equipment Breakdown. If the services of a Laborer are not required due to inclement weather, equipment breakdown or other conditions beyond the contractor's control, the Employer shall notify the Laborers two (2) hours before starting time and if not notified two (2) hours before starting time, the employee shall receive two (2) hours pay for reporting. The Employer must notify the Local Union or Steward if there shall be no work due to weather conditions. Whenever weather conditions are unfavorable, employees who have no telephone shall ascertain for themselves whether there will be work by contacting the Local Union. The Employer shall have no obligation to pay reporting time to those employees whom the Employer cannot, by diligent effort, contact to notify them that there will be no work because of weather conditions or equipment breakdown. If work is weathered out or equipment breakdown after work has started but before two (2) hours have been worked, two (2) hours will be paid. If the men are provided with proper rain gear and are unable to work after the aforementioned two (2) hours because of conditions due to weather, they shall be paid for actual time worked over two (2) hours. The Employer may hold the men on the job but shall not require them to perform any work in inclement weather unless

provided proper protection. The reporting time for Saturdays, Sundays and holidays shall be as stated above. However, in the event inclement weather or equipment breakdown causes stoppage of work on those days, Laborers will be paid for time actually worked, but in no event less than two (2) hours at the rate applicable for that day.

Ten Hour Day Schedule. In the event inclement weather or equipment breakdown causes stoppage of work on this schedule, Laborers will be paid for time actually worked, but in no event less than two (2) hours. Laborers would be required to stay on the job for the time they are being paid or at their request be allowed to leave and be paid for actual hours worked.

## ARTICLE 10
## WORK HOURS AND OVERTIME

Section A. Eight Hour Schedule. A maximum of eight (8) hours shall constitute a day's work and same shall be between the hours of seven (7:00) a.m. and five (5:00) p.m., excepting work that must be performed according to specifications; all work necessary previous to or after starting of major crew or machinery, to be performed at the regular rate. Agreements may be made between the Employer and Business Manager of the Local in whose jurisdiction the work is being performed regarding the starting and quitting time. Notwithstanding the above, all work done over eight (8) consecutive hours in any one day, lunch excepted, shall be paid at the rate of one and one-half (1½) times the basic rate of pay. Monday through Friday shall constitute one week's work and shall be so recognized.

Section B. Laborers' ordered out to work on Saturday shall be scheduled for a minimum of three (3) hours, and receive a minimum of three (3) hours pay except as provided in Article 9. When Laborers work beyond three (3) hours they shall be paid for actual hours worked.

Section C. Laborers lunch period shall be a thirty (30) minute period between the hours of 11:00 a.m. and 1:00 p.m. and once a lunch period has been established it may not be changed except by mutual agreement. Any Laborer who works through any part of said lunch period shall be paid at the rate of time and one-half (1½) for such period.

Section D. Ten Hour Day Schedule. Where not prohibited by law, and upon forty-eight (48) hour notification to the Union, the Contractor may choose the option of working four (4) ten (10) hour days, Monday through Friday, at straight time. Overtime is to be paid at the rate of one and one-half (1½) times the basic wage rate for all hours worked over ten (10) in a day or over forty (40) in a week. There will be no pyramiding of overtime in this Agreement. In the event inclement weather or equipment breakdown causes a loss of time during these five (5) days, Friday may be used to make up the remaining hours needed to complete a forty (40) hour work week, however, no employee required to work Friday shall be scheduled to work less than an eight (8) hour shift, with all hours in excess of forty (40) for the work week being paid at the applicable overtime rate.

The Employer agrees that when using this option, it shall be for the duration of the job or until the Employer notifies the Business Manager one (1) week in advance that the Employer elects to return to a five (5) day, eight (8) hour schedule for the duration of the job, and cannot be changed again unless mutually agreed upon by the Business Manager and the Employer.

Section E. Double time shall be paid for work done on Sunday or the holidays as specified in Article 11.

Section F. Laborers employed in the removal of hazardous and toxic waste, asbestos abatement and removal, and lead base paint abatement and removal shall receive a minimum paid break of thirty (30) minutes during each four (4) hour period.

Section G. The Employer may, at his discretion, cause work on any project to be done in two or more shifts however, when shift work is commenced it must be carried on for two (2) or more days.

Section H. When shifts are required, the first (1st) shift shall work eight (8) hours at the regular Straight time rate. The second (2nd) shift shall work eight (8) hours at the regular straight time rate, plus a two dollar ($2.00) per hour shift premium. The third shift shall work eight (8) hours at the regular straight time rate, plus a two dollar and twenty-five cent ($2.25) per hour premium. A thirty (30) minute lunch period for all shifts shall be agreed to by the Employer and the Union and shall not be considered time worked.

Section I. Any shift that is scheduled outside of the normal 7 a.m. to 5 p.m. work day shall be considered second (2nd) shift and the two dollars (2.00) per hour shift premium shall be paid.

Section I.2 Straight time shall be paid for the first eight (8) hours of night shift work started on Friday evening. Any hours worked over eight (8) hours on a Friday night shift overlapping into Saturday shall be paid at time and one-half (11/2). Implementation of this provision shall be made by mutual agreement at a pre-bid or pre-job conference

Section J. MAKE UP DAY ON SATURDAY: After a series of meetings during negotiations in regards to keeping signatory contractors competitive and where not prohibited by law, Saturday may be used as a make-up day provided the following paragraph is adhered to.

It is mutually agreed that when contractors anticipate a heavy workload or a tight completion schedule, they will notify the District Council who will notify the Local Business Manager. Contractors working an eight (8) hour schedule will explain the need for Saturday make-up days at straight time due to inclement weather conditions, major equipment breakdowns or tight completion schedules. Then in such case, up to eight (8) hours will be worked on Saturday at straight time to make up for lost hours during the

23

week or up to forty (40) hours after which all time worked shall be at the rate of time and one-half (1½).

In case of the four (4) day ten (10) hour work schedule, two (2) days must have been lost due to inclement weather or equipment breakdown before Saturday can be scheduled as a straight time day not to exceed forty (40) hours for the work week.

## ARTICLE 11
## HOLIDAYS

Holidays recognized under this Agreement are Sundays, New Year's Day, Memorial Day, July Fourth, Labor Day, Veterans Day, Thanksgiving Day, Christmas Day. A holiday shall be from midnight to midnight unless otherwise agreed by the Business Manager. In case a specified holiday falls on Sunday it shall be observed on Monday, the pay for such day shall be at rate of two (2) times the basic rate, if worked. If a holiday falls on a day other than a Sunday, it shall be celebrated on that day. Provided, however, by mutual agreement between the Contractor and the Business Manager of the Local Union, Veterans Day holiday can be scheduled the day after Thanksgiving.

## ARTICLE 12
## BUSINESS MANAGER & STEWARD

Section A. The Business Manager or his designee shall have the right to visit all jobs in the performance of his duties to the Union, and shall have the authority to appoint the steward and shall notify the contractor who the steward is. The steward shall have seniority on all operations requiring laborers, provided the steward is available and qualified. Insofar as practical, the contractor shall divide overtime equally among all other employees. The steward shall have the right to be present at all times when laborers' work is being performed, if qualified.

Section B. Upon appointment, the Steward shall enjoy the right to be the last person laid-off and the first person recalled to work by the Employer, on any given job or project. The Steward shall have the right to be working on the job when Laborers work is being performed if qualified.

## ARTICLE 13
## ARBITRATIONS

Section A. There shall be no stoppage of work on account of any difference which might occur between the Employers and the Union.

Section B. Any dispute (other than jurisdictional) which may arise between the parties hereto or between any particular Employer or Local Union covered by this Agreement which cannot promptly and satisfactorily be resolved by agreement shall be resolved in the following manner:

A joint committee consisting of two (2) appointed by the AGC of Illinois and the Egyptian Contractors' Association, Inc. and two (2) appointed by the Southern & Central Illinois Laborers' District Council shall meet, hear and consider the matter of Highway/Heavy and Utility Construction in good faith and to best of their ability attempt to reach a majority decision on the merits of the dispute which decision shall be final and binding. A joint committee consisting of two (2) appointed by the Southern Illinois Builders Association and two (2) appointed by the Southern and Central Illinois Laborers' District Council shall meet, hear and consider the matter of building construction in good faith and to the best of their ability attempt to reach a majority decision on the merits of the dispute which decision shall be final and binding. In the event that either Committee failed to reach a majority decision within a brief and reasonable period of time, the AGC of Illinois, the Egyptian Contractors' Association, Inc. or the Southern Illinois Builders Association and the Southern and Central Illinois Laborers' District Council shall petition the Federal Mediation and Conciliation Service to furnish a panel of five (5) from which panel an impartial arbitrator shall be selected to resolve the dispute. The decision of the arbitrator shall be final and binding.

Section C. The arbitrators shall not be empowered to add to, detract from or alter the terms of this contract.

## ARTICLE 14
## JURISDICTIONAL DISPUTES

The Employer shall assign work on the basis of traditional craft jurisdictional lines. Jurisdictional assignments shall be made on the basis of agreements of record, established trade agreements and prevailing area practices. All questions, complaints or disputes dealing with craft jurisdiction shall be referred to the Business Representatives of the Unions involved in the jurisdictional dispute and to the Employer's authorized representative, who shall then meet at a location acceptable to all parties. Jurisdictional disputes that cannot be resolved at the local level shall be referred to the International Unions involved for a determination. Pending such determination, the work will continue as assigned by the Employer. The Unions involved shall agree to request a panel of five (5) arbitrators from the Federal Mediation and Conciliation Service, the Unions shall agree to one of the five (5). Any determination made pursuant to this provision shall be final and binding on the disputing Unions and the involved Employer on this project only. A signatory contractor shall not be liable for back pay in the event an arbitrator renders a decision awarding the work to a different trade. However, the signatory contractor will be required to adjust the work assignment to comply with the award and will be liable for back pay from the date of the award should it fail to follow the arbitrator's decision. Such a determination shall not establish a precedent on other project sites. In resolving such disputes, it will be recognized that the Employer continues to determine crew sizes.

## ARTICLE 15
## PAY DAY

Section A. The Employer shall pay the Laborers every week, the pay day to be chosen by the Employer and shall be within four (4) days from the end of the fiscal week. The pay shall be in check, direct deposit or pay card (at the employee's discretion) and shall be in full up to the regular quitting time at the end of the fiscal week. The Employer shall furnish all employees with written proof of payroll deductions or check stub.

Section B. The Employer shall have the right to make such deductions from the Laborers' salary as required by the state and federal laws or any other legal deductions.

## ARTICLE 16
## FAILURE TO PAY

Should an Employer fail, refuse or neglect to pay any number of Laborers on the regular pay day, the steward shall make demand upon the Employer for payment, and if the Laborers are not paid within one (1) hour, they shall be paid waiting time, unless, however the delayed payment is a question of dispute, subject to arbitration.

## ARTICLE 17
## REMAINING ON THE JOB

If the Employer requires Laborers to remain on the job during a stoppage of work, they shall be paid continuous time.

## ARTICLE 18
## LABORERS DISCHARGED OR LAID OFF

If a Laborer is discharged or laid off permanently and the Employer does not have facilities at the job site to prepare payroll checks, the Laborers pay check shall be mailed to his home address within forty-eight (48) hours excluding weekends and holidays.

## ARTICLE 19
## COMPENSATION INSURANCE

The Employer shall carry Workers' Compensation and Unemployment Insurance with a company or Association authorized under applicable state laws and regulations to insure the liability to pay compensation as required under Illinois Workers' Compensation Law. Both parties may open this article if they agree, if at some point during this Agreement the Illinois Workers' Compensation law allows.

26

## ARTICLE 20
## ICE WATER

It is agreed that ice water shall be furnished by the Employer and such water must be kept in clean sanitary containers served out of clean sanitary drinking cups.

## ARTICLE 21
## REPORT IN CASE OF INJURY

Section A. It shall be the duty of the foreman to report to the Employer and the duty of the Steward to report to the Union any accident to any Laborer which may occur on the job where they are employed. It shall be the duty of the Employer and the Steward to see to it that the Laborer be taken care of and his family notified if seriously injured.

Section B. Safety and wellbeing of employees is the responsibility of the Employer. Unless extreme circumstances warrant, the Steward shall not leave the job to accompany an injured worker to the doctor unless requested by the Employer. In such case, the Steward shall be paid for the actual time spent in taking care of the injured Laborer.

## ARTICLE 22
## TOOLS AND SLICKERS

Section A. The laborer shall be responsible for having hand tools such as a tape measure, hammer, putty knife or other small tools to be prepared and productive. The Employer shall be required to furnish all other tools.

## ARTICLE 23
## SUBCONTRACTOR

This Agreement shall bind all subcontractors on work being done at the site of construction, any contractor who sublets any of his work on any project shall make this Agreement a part of the specifications when such work is sublet and will ascertain that this section is fully complied with and the contractor shall demand compliance. Names and telephone numbers of the sub-contractors shall be supplied to the Local Union at the time of the pre-job conference.

## ARTICLE 24
## SAFETY

Section 1. It is recognized that there are important roles to be performed by the employees, Union officials and management in the prevention of accidents and ensuring a safe and healthy working environment. The worksite should be maintained in a clean and orderly state, so as to encourage efficient and safe operations.

Section 2. It is important to succeed in this cooperative effort because it is also recognized that failure can mean hardship to the employee and a threat to the security of their family.

Section 3. It is because of these mutual benefits that the employees, Union officials and management pledge to cooperate and do all that is possible to maintain a safe, hazard-free working environment.

Section 4.   Personal Cell Phone and Other Communication Devices:   Because they create distractions and disrupt regular work routines, the use of personal communication devices such as cellular phones and audible pagers is prohibited during work hours and in work areas, unless the company has provided such devices to the employee for business use only. Any employee carrying a non-company issued pager with an audible alarm must ensure the alarm is turned off during work hours and in work areas. Employees must not make, return or receive calls on personally owned portable phones during work hours. Employees will have access to communication devices for emergencies. Limited and TEMPORARY exceptions to this policy permitting the use of personally owned communication devices for ongoing personal emergency situations (such as imminent birth of a child) can be made only with the prior and continued approval of the employee's supervisor.

Section 5A: The Laborers shall use its training facility to ensure that all Laborers shall be required to successfully complete the Ten-Hour OSHA (Occupational Safety and Health Administration) Construction Safety Course. Each Laborer shall be required to successfully complete the Ten-Hour OSHA Construction Safety and Health Course or an industry equivalent every three (3) years to maintain their safety awareness and competence. Laborers shall be certified in signaling and rigging.

Employers may request referral of Laborers who have completed the Ten-hour OSHA course and refuse Laborers who have not completed the course without penalty.
1
Section 5B: Furthermore, to increase the safety awareness on all job sites, all Laborers shall be required to successfully complete the four (4) hour Laborers' Flagger Certification Program and thereafter maintain their certification by repeating the Flagger Certification every three (3) years.

Section 5C: All Laborers referred to a job with less than 1,000-hours experience will be given an identification card or form which must be given to the job site supervision indicating that referee has less than 1,000 hours worked in construction.

Section 6. No Laborer shall be required to work in any ditch or other excavation site considered unsafe without proper shoring for safety. Laborers working in dust around cement hoppers and other dangerous dust infected areas shall be provided with respirators and goggles. All Laborers shall be responsible for wearing appropriate safety gear such as steel toe boots, shirts with a minimum three (3) inch sleeve length, full length pants. Respiratory, ear, eye and head protection shall be provided by the

Employer. However, it is understood and agreed that employees shall be responsible for purchasing their own safety steel toe boots, shirts, rubber boots, rain gear, gloves and pants. The Employer and all employees agree to abide by all federal, state and local laws, and all company safety policies.

Section 7. Failure on the part of an employee to comply with safety rules established by the Employer may be grounds for dismissal.

Section 8. A six-person committee shall be immediately formed with a representative from each of the following organizations, Southern Illinois Builders Association, Associated General Contracts of Illinois, Egyptian Contractors Association, Illinois joint Apprenticeship and Training Fund, Laborers' Local 773, and Laborers' Local 1197.

This committee will be charged with setting curriculum requirements for Journey workers to complete forty (40) hours of training each calendar year. This mission shall be completed no later than January 1, 2009.

This committee shall meet as often as possible to complete the aforementioned mission and then at appropriate times throughout the duration of this Agreement to adjust the curriculum as deemed necessary by a majority of the committee.

Section 9. The Employer agrees all costs associated with background checks when required as a condition of employment shall be at the expense of the Employer.

## ARTICLE 25
## MARKET RECOVERY

On Prevailing Wage jobs where non-signatory or bonafide non-union contractors are bidding, the parties agree as follows: The Employer agrees to employ Union Laborers, pay wages and fringe benefits as set forth in the bid document for the duration of that job, except that Health & Welfare contributions shall be as specified in this Agreement, and pay overtime in accordance with applicable state and federal law. All other terms and conditions of employment shall be as mutually agreed to between the Employer and the District Council Business Manager.

Private (non-prevailing wage) Work. The Employer agrees to employ Union Laborers. Wages, fringe benefits and all other terms and conditions of employment shall be as mutually agreed to between the Employer and the District Council Business Manager at a pre-bid conference.

## ARTICLE 26
## ALCOHOL AND NON-PRESCRIPTION DRUGS

Section 1. Possession, sale or use of alcohol or non-prescription drugs on the Employer's property, site of construction or during the working hours regardless of the location shall be grounds for termination. Any employee who reports to work under the

29

influence of alcohol or non-prescription drugs shall be subject to termination. "Non-prescription drugs" shall be defined as drugs which cannot be legally dispensed without a prescription and are not covered by a current valid prescription endorsed by a qualified physician for use by named employee in question. Employees working under this Agreement shall be subject to all necessary diagnostic medical testing for purposes of verifying compliance with this provision, when required by the Employer at the expense of the Employer.

Section 2. Provisions for employee drug or alcohol testing will be outlined in either the EBOLT Trust Agreement, Employer policy and procedures or as required in documentation by Project Owners. Drug and alcohol testing shall consist of, but not limited to, pre-employment, random, reasonable cause/suspicion, post-accident, injury or unsafe act. Employees refusing to consent to such testing shall be deemed to have voluntarily quit. Those Laborers' who are covered under the EBOLT Trust Fund Agreement shall be tested pursuant to the procedures outlined in the EBLOT Substance Abuse Policy.

Section 3. All drug and/or alcohol testing shall follow the procedures or future revisions outlined by the Substance Abuse and Mental Health Services Administration (SAMHSA) and shall be in compliance with all state and federal laws regarding alcohol/drug testing.

Section 4. Personnel utilized for testing will be certified as qualified to collect samples and adequately trained in collection procedures. The laboratory selected to conduct the analyses shall be certified by the Department of Health and Human Services and/or Substance Abuse and Mental Health Services Administration (SAMHSA) approved.

Section 5. All drug screening tests shall be capable of identifying marijuana, cocaine, opiates (morphine & codeine), phencyclidine (PCP), and amphetamines (amphetamines, methamphetamine) or other drugs that may be specified by future Substance Abuse and Mental Health Services Administration (SAMHSA) direction.

Section 6. Test Results: Concentrations of a drug at or above the following levels shall be considered a positive test result when using the initial immunoassay drug screening test:

INITIAL TEST

Level-Nanogram/Milliliter (hereinafter referred to as ng/ml).

Marijuana metabolite....................................50
Cocaine metabolite....................................150
Opiate metabolite....................................*2000
Acetylmorphine.........................................10
Phencyclidine...........................................25
Amphetamine..........................................500

30

*25 ng/ml if immunoassay-specific for free morphine

Concentration of a drug at or above the following levels shall be considered a positive test result when performing a confirmatory Gas Chromatography/Mass Spectrophotometry test on a urine specimen that tested positive using a technologically different initial screening method:

CONFIRMATORY TEST                         LEVEL        (ng/ml)

Marijuana metabolite....................................*15
Cocaine metabolite....................................**100
Opiates:
    Morphine...................................... ***2000
    Codeine....................................... ***2000
Acetyl morphine.............................................10
Phencyclidine...............................................25
Amphetamines:
    Amphetamines...................................250
    Methamphetamine..............................250

*Delta-9-tetrahydrocannabinol-9-carboxylic acid
**Benzoylecgonine
***25 ng/ml if immunoassay-specific for free morphine

Alcohol test levels at or above .04 shall be considered a positive test for safety-sensitive equipment.

Section 7.  Employees taking prescription medication which according to their physician has physical or mental side effects which could cause impairment on the job site, should report the medication to site supervision. Employees who report use of lawful medication as described above shall not be disciplined for use of same.

Section 8. Any employee with test results of negative shall be compensated for all hours lost. If an employee has a confirmed positive test, (s)he will be: (a) suspended without pay up to thirty (30) days, or as determined by established company policy, (b) mandatory enrollment in a certified rehabilitation program, at employee's own expense, and successful completion, (c) and agree to periodic follow-up drug testing for up to two (2) years after successful completion of rehabilitation program. A second positive or refusal to participate in a certified rehabilitation program after the first positive test shall result in termination of employment.

Section 9. Termination under this provision, including the circumstances surrounding the conduct of the drug or alcohol test, shall be fully subject to the arbitrations provision of this Agreement.

31

Section 10. AGC of Illinois, Egyptian Contractors' Association Inc, the Southern & Central Illinois Laborers' District Council, Local 773, Local 1197, and Southern Illinois Builders Association (SIBA) agree to work mutually with other Associations and highway crafts in developing an EBOLT type Drug Screening Substance Abuse Policy and upon completion, by way of addendum be added to this Agreement. If at any time the Board of Trustees for EBOLT determine that any expansion of the program into jurisdictions other than Local 773 becomes inefficient or unfeasible, the Board may cease operations into any expanded jurisdiction with a six (6) month written notice to all signatory parties.

Section 11.   Local #773 & #1197 - Egyptian Builders and Organized Labor Together (EBOLT) Substance Abuse Policy. The Employer agrees that by signing this Agreement he becomes bound by and a party to the Agreement and Declaration of Trust creating and establishing the Egyptian Builders and Organized Labor Together Substance Abuse Fund, and all amendments thereto whenever adopted, in the same manner and with the same effect as if the Employer had executed such Agreement and Declaration of Trust. The Employer hereby designates as his representative such Trustees as may be, from time to time, appointed to serve as Employer Trustees herein.   Employer contributions are as listed in Addendum A.

## ARTICLE 27
## SAVINGS CLAUSE

It is the intent of both parties to this Agreement to comply fully with all state and federal laws. If it is found by competent authority that any section of this Agreement is in conflict with any state or federal law, then such section shall be void and both parties agree to immediately meet and renegotiate such sections to conform to the law. All other sections and articles shall remain in full force and effect.

## ARTICLE 28
## NO DISCRIMINATION

It is agreed that neither the Employers nor the Union shall engage in or encourage employment practices which discriminate against employees or applicants on the basis of age, sex, race, color, national origin, religion, disabilities, Vietnam era veterans, disabled veterans or any other characteristic protected by law.

## ARTICLE 29
## ANNUAL EMPLOYMENT PHYSICAL

Before reporting to work, when required by an Employer, every Laborer shall be required to have an annual physical examination by a licensed medical doctor at a facility designated for this purpose by the Southern Illinois Laborers' & Employers' Health & Welfare Fund (Fund).

The arbitration clause of this Agreement shall apply to any controversy arising over this provision.

This provision of this Agreement shall be at the expense of the Employer demanding such physical.

## ARTICLE 30
## COMPLETENESS OF AGREEMENT

This Agreement is intended to cover all matters of wages, hours and other conditions of employment including insurance benefits, welfare funds, pension or benefit plans or related subjects and during the balance of the term of this Agreement, the Employers will not be required to negotiate on any further matters affecting these or any other subjects not specifically set forth in this Agreement.

## ARTICLE 31
## DURATION AND TERMINATION

This Agreement shall be in full force and effect from April 1, **2019** through March 31, **2022** and thereafter from year to year unless either party notifies the other in writing of their desire to modify or terminate this Agreement at least ninety (90) days but no more than one hundred twenty (120) days before March 31, **2022**.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed and effective as of the day and year first above set forth.

By signing this Agreement which has been negotiated by and between the Associated General Contractors of Illinois, Egyptian Contractors Association, Inc., Southern Illinois Builders Association (collectively "Employer Associations") and the Southern & Central Illinois District Council on behalf of its affiliated Local Unions, including Laborers' Local 773 and Laborers' Local 1197 (collectively "Union") the undersigned employer agrees to abide by all the Articles, stipulations and fringe benefits contained herein through Local #773 and Local #1197. By signing this Memorandum of Agreement, the undersigned Employer also agrees to be bound by the terms and conditions of any amendments, extensions, or changes in this Agreement that are agreed upon by the Union and the Employer Associations. Additionally, the undersigned Employer agrees to be bound by the terms and conditions of all subsequent and successor agreements to this Agreement negotiated between the Union and the Employer Associations, unless the undersigned Employer notifies the Union in writing of its desire to terminate this Agreement or any subsequent agreement at least ninety (90) days but not more than one hundred twenty (120) days prior to the expiration of the respective agreement, further, said individual contractor agrees that notice served by the Union upon the Employer Associations and Mediation Service for reopening and termination or commencement of negotiations shall constitute appropriate notice upon and covering the individual contractor signatory hereto for all purposes. In no event shall the Associations have an obligation to independently notify individual contractors.

FOR THE UNION:

SOUTHERN & CENTRAL ILLINOIS
LABORERS' DISTRICT COUNCIL

Clint B. Taylor                    3/6/19
Business Manager                   Date

FOR THE EMPLOYERS:

ASSOCIATED GENERAL
CONTRACTORS OF ILLINOIS

Frank Kazenske                    3/6/2019
Frank Kazenske                    Date
Director of Labor Relations

EGYPTIAN CONTRACTORS
ASSOCIATION, INC

Brian Rehbein                    3-9-19
Brian Rehbein                    Date
Executive Director

SOUTHERN ILLINOIS BUILDERS
ASSOCIATION

Donna Richter                    3/6/19
Donna Richter                    Date
Chief Executive Officer

34

# RESTATED AGREEMENT AND DECLARATION OF TRUST

## OF THE

### CENTRAL LABORERS' PENSION FUND

WHEREAS, there has heretofore been entered into an Agreement and Declaration of Trust, effective as of the 1st day of January, 1965, by and between the following parties:

LABORERS' LOCAL UNION NO. 253, affiliated with the International Hod Carriers', Building and Common Laborers' Union of America, hereinafter included in reference to the Union as the representative of employees as hereinafter defined and JAMES BROWER, HERSCHEL WARD and WILBUR FREITAG, who, with their successor, are hereinafter referred to as "UNION TRUSTEES",

and

MORGAN COUNTY CONTRACTORS' ASSOCIATION and JOSEPH E. DOYLE, ROBERT E. NEFF and KENNETH R. PRICE, who, with their successors, are hereinafter referred to as "EMPLOYER TRUSTEES",

and

all other employer associations hereinafter referred to as the "Association," who have heretofore bargained or may hereafter bargain or enter into collective bargaining agreements or other agreements with the Union or with representatives of this trust for and on behalf of themselves and their respective members who by virtue of their said membership or otherwise are parties to collective bargaining agreements with the Union or are parties to this Trust Agreement or are otherwise bound to the provisions hereof as hereinafter provided, and other employers in the building and construction industry and who may not be members of any association (hereinafter the term "Employers" shall include the associations and non-association employers) but who agree to be bound by this Agreement or who are otherwise so bound as provided hereon,

WHEREAS, said Agreement and Declaration of Trust has heretofore been amended; and

WHEREAS, under Article IX, Section 1, of said Agreement and Declaration of Trust, the said Trustees have the power and authority to amend such Agreement and Declaration of Trust from time to time as therein provided; and



**EXHIBIT**

**C**

WHEREAS, it is determined to be desirable to amend said Agreement and Declaration of trust and to restate the same so as to incorporate therein all amendments adopted heretofore or as part of this restatement;

NOW, THEREFORE, the Trustees, designated and in office, as such, have executed this Restated Agreement and Declaration of Trust as indicating their acceptance of the respective duties imposed upon them as Trustees under the terms of this Agreement, to read as follows:

WHEREAS, the ASSOCIATIONS and other EMPLOYERS have heretofore entered into certain agreements, with the union or with representatives of the Trust created hereby, which agreements may be amended from time to time and which agreements provide for certain contributions to be made to the Pension Fund, created and established hereby for the purpose of providing pensions for employees as hereinafter defined pursuant to a Pension Plan or plans established and amended by the Trustees from time to time, which plan or plans shall become qualified in accordance with the requirements of the Internal Revenue Code; and the parties desire to establish a Pension Trust Agreement under which the money paid for pension benefits will be held in trust in accordance with the terms of this document.

NOW, THEREFORE, in consideration of the premises IT IS HEREBY AGREED AS FOLLOWS:

## ARTICLE I

## DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement.

**Section 1. EMPLOYER**. The term "Employer", as used herein shall mean any Employer who:

(a)   now or hereafter is a party to a collective bargaining agreement with the Union, requiring periodic contributions to the Pension Fund created by this Trust Agreement or who in the past has been a party to such a collective bargaining agreement, if such agreement has not been terminated by its terms or by operation of law; or

(b)   is a party to any memorandum of understanding or memorandum of agreement or similar instrument with the Union, which by its terms incorporates by reference a complete collective bargaining agreement which requires the parties thereto to make contributions to the Fund; or

(c)   in writing adopts and agrees to be bound by the terms and provisions of this Agreement as the same may be amended or modified from time to time; PROVIDED, HOWEVER, that to the extent that this definition includes any entity or person who meets the definition or concept of a "non-bargaining unit employer,"

2

and/or who employs a person who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the employee and his employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; PROVIDED FURTHER, that all non-bargaining unit employers must be in compliance with the Non-Bargaining Unit Policy and Procedures of the Central Laborers' Pension Fund; or

(d)     is a party to any written instrument which evidences an agreement to be bound by the provisions of this Trust Agreement, including but not limited to, a contribution report form listing the employees on whose behalf contributions are remitted and provisions expressly binding such Employer to this Trust Agreement or otherwise evidencing such Employer's intention to be so bound by the making of such contributions; or

(e)     by any course of conduct, including but not limited to, oral representations to Employees, representatives of the Union, Trustees, attorneys or other persons, ratifies or accepts the provisions of any collective bargaining agreement which requires contributions to the Fund created hereby or of this Trust Agreement itself, or of any other written instrument which binds such Employer to make contributions to the Fund, or is estopped to deny such obligation; or

(f)     is a member of any of the Employer Associations, or hereafter becomes a member of any of said Associations, named herein or who was a member at any time when representatives of said Associations commenced negotiations of the current collective bargaining agreement on behalf of its members whether or not said membership is held current at all times; or

(g)     is a member of any other multi-employer bargaining unit, or hereafter becomes a member of any of said multi-employer bargaining units, which has a collective bargaining agreement with the Union, whether formalized or existing solely as a matter of custom and practice.

The term "Employer," shall also mean the Union, for the purpose of providing benefits hereunder for the eligible Employees of the Union for whom the Union is obligated to contribute to the Pension Fund.

The term "Employer" shall also mean the Board of Trustees for the purpose of providing benefits hereunder for the eligible Employees of the Trust for whom the trust shall make contributions to the Pension fund, in accordance with the Plan as said term is hereinafter defined.

**Section 2. EMPLOYEE**.  The term "Employee," as used herein, shall mean any of the following persons without regard to race, sex, color, creed, national origin, religion or union membership:

(a)     any person covered by a collective bargaining agreement between an Employer and

3

the Union who is engaged in employment with respect to which the Employer is obligated by the collective bargaining agreement to make contributions to the Pension Fund;

(b)   any person employed by an Employer who performs work within the jurisdiction of the Union as said jurisdiction is set forth in any applicable collective bargaining agreement or by any custom or practice in the geographic area within which the Employer operates and his Employees perform work; or

(c)   any person on whose behalf an Employer has made contributions to the Fund, and has reported same on a standard report form which contains a provision binding said Employer to the provisions of this Trust Agreement or otherwise evidencing said Employer's intent to be so bound; or

(d)   any person employed by an Employer who has signed any memorandum of understanding incorporating by reference the provisions of any applicable collective bargaining agreement or the provisions of this Trust Agreement where such person is covered by such agreements to be incorporated by reference or both; or

(e)   any person who is not covered by a collective bargaining agreement but on whose behalf his Employer is otherwise obligated to make contributions to the Fund in accordance with the provisions of this Trust Agreement who performs work which would be work performed by members of a bargaining unit recognized by the Employer or certified by the National Labor Relations Board if said person's Employer were a party to any of the standard collective bargaining agreements by and between the Union and any of the Associations defined herein; PROVIDED, HOWEVER, that to the extent that this definition includes any person who meets the definition or concept of a "non-bargaining unit employee" and/or who renders service to a "non-bargaining unit employer," as more fully defined and described in Section 401(a) of the Internal Revenue Code, the employee and his employer must meet all applicable strictures and tests set forth in said Section 401(a) of the Internal Revenue Code; or

(f)   any Employee in a certified or recognized collective bargaining unit represented by the Union.

The term "Employee" shall also mean all eligible persons employed by the Union, on whose behalf the Union shall make payments to the Trust at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust.

The term "Employee" shall also mean all eligible persons employed by the Trust on whose behalf the Board of Trustees shall make payments to the Trust, out of the Trust Fund at the times and at the rate of payment equal to that made by any other Employer who is a party to the Trust.

**Section 3.   UNION.**   Such representative of the Laborers' International Union of North

4

America and its District Councils that may enter into Collective Bargaining Agreements or written agreements requiring contributions to this Trust, or such representatives of other labor organizations or trades and crafts approved for participation by the Trustees hereof.

**Section 4. ASSOCIATION.** The term "Association" shall mean WESTERN ILLINOIS CONTRACTORS' ASSOCIATION (successor to Morgan County Contractors' Association); ASSOCIATED GENERAL CONTRACTORS OF ILLINOIS; SOUTHERN ILLINOIS BUILDERS ASSOCIATION; CENTRAL ILLINOIS BUILDERS OF AGC; and NORTHERN ILLINOIS CONTRACTORS ASSOCIATION.

**Section 5. TRUSTEES.**

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the various associations as hereinafter provided, and such Trustees shall represent all Employers as defined herein. All employers bound to this Agreement ratify and confirm the appointment with the Employer Trustees and their Successors.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the District Councils of the Laborers' International Union of North America as hereinafter provided who shall represent all Employees as defined herein and their families and dependents, as appropriate, according to the provisions of the Plan.

(c)    The term "Trustees" shall mean the Employer Trustees and Union Trustees collectively who shall have such powers, duties and obligations as set forth in Article III hereof. All Trustees are hereby denominated "named fiduciaries" of the Fund.

**Section 6. AGREEMENT AND DECLARATION OF TRUST.** The term "Agreement and Declaration of Trust" shall mean this instrument, including any duly adopted amendments hereto and modifications hereof.

**Section 7. PLAN.** The term "Plan" shall mean the program of Pension Benefits to be established by the Trustees pursuant to this Agreement and Declaration of Trust; provided, however, that such program shall be consistent with all applicable laws and regulations including, but not limited to, the Employees Retirement Income Security Act of 1974, as amended, hereafter called "ERISA".

**Section 8. FUND.** "Trust," "Trust Fund," and "Fund" as used herein shall mean the entire trust estate created pursuant to this Agreement as it may, from time to time, be constituted, including, but not limited to all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds, and other sums payable to the Trustees on account of such contracts), all investments made and held by the Trustees, all income increments, earnings and profits therefrom, and any and all other property or funds received by the Trustees by reason of their acceptance of this Agreement and Declaration of Trust for the uses and purposes set forth herein.

**Section 9. CONTRIBUTIONS.** The term "Contributions" shall mean the monies paid to

5

the Fund by Employers pursuant to applicable agreements as defined herein or as otherwise required hereby, which shall be held in trust for the purposes set forth herein.

**Section 10. BENEFITS**. The term "benefits" shall mean payments, whether from the principal or income, or both, of the Fund for the benefit of Employees, their families and dependents, for pensions on retirement or death of Employees.

**Section 11. WRITTEN AGREEMENT**. The term " Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to the Fund together with any modification, amendment or renewals thereof, including but not limited to collective bargaining agreements, memoranda of understanding which incorporate by reference collective bargaining agreements or this Trust Agreement, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Trust Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Trust Agreement and/or the Plan established pursuant hereto.

**Section 12. ADMINISTRATOR**. The Administrator of the Fund as that term is used in ERISA shall be the Trustees collectively.

**Section 13. ERISA**. The term "ERISA" as used herein shall mean the Employee Retirement Income Security Act of 1974, any amendments thereto and any regulations promulgated thereunder.

## ARTICLE II

## CREATION OF PENSION FUND

**Section 1. ESTABLISHMENT OF FUND**. There is hereby established the CENTRAL LABORERS' PENSION FUND to be used for the purposes generally described in Section 302 (c) of the Labor Management Relations Act of 1947 as amended and by various provisions of ERISA and specifically set forth in this Agreement and Declaration of Trust and the Plan established pursuant hereto.

**Section 2. GENERAL PURPOSES**. The Fund shall be a Trust Fund and shall be used exclusively for the purpose of providing retirement income to Employees and/or income benefits to the beneficiaries or families of Employees in the event of death or disability of Employees as decided by the Trustees and shall further provide the means for defraying reasonable expenses of administering and operating the Plan in accordance with this Agreement and Declaration of Trust.

Under no circumstances may the assets of the Fund revert to an Employer, provided, however, that nothing in this Agreement and Declaration of Trust shall prevent a contribution which is made by an Employer by a mistake of fact to be returned by the Trustees to such Employer to the extent legally permissible.

# ARTICLE III

## TRUSTEES

**Section 1. UNION AND EMPLOYER TRUSTEES.** Except as otherwise herein provided, the operation and administration of the Pension Fund shall be the joint responsibility of a Board of Trustees comprised of eight (8) Employer Trustees appointed by the Associations and eight (8) Union Trustees appointed by the District Councils of the Laborers' International Union of North America, who shall have exclusive authority and discretion to manage and control the assets of the Plan except to the extent that they delegate the authority to manage, acquire or dispose of assets of the Plan to one or more Investment Managers pursuant to the provisions of Section 402 (c) (3) of ERISA, which delegation is expressly authorized by this Trust Agreement.

**Section 2. TRUSTEES.** There is hereby created a Board of sixteen (16) Trustees. Said Trustees shall administer this Fund.

(a)     Each District Council of the Laborers' International Union of North America shall select and appoint two (2) Union Trustees and each such Trustee shall be a member of a Local Union participating in the Central Laborers' Pension Fund or an officer, employee or representative of one of the aforesaid District Councils. In the event any District Council merges, the surviving Council shall select a number of Union Trustees equal to the number of Union Trustees previously appointed by the merged Councils.

(b)     The Western Illinois Contractors Association shall appoint one (1) Employer Trustee; the Associated General Contractors of Illinois shall appoint four (4) Employer Trustees; the Central Illinois Builders of AGC shall appoint one (1) Employer Trustee; the Southern Illinois Builders Association shall appoint one (1) Employer Trustee; and the Northern Illinois Contractors Association shall appoint one (1) Employer Trustee. These Employer Trustee appointments take into consideration the geographical area of the Pension Fund and a reasonable balance with reference to the building and heavy and highway segments of the construction industry. Successor Trustees shall be appointed by the organization which made the original Employer Trustee appointment.

(c)     Deadlock of Board of Trustees. A deadlock shall be deemed to exist whenever a proposal, nomination, motion or resolution made or proposed by any one of the Trustees is not adopted or rejected by a majority vote of those present and the maker of the proposal, nomination, motion or resolution notifies the remaining Trustees in writing that a deadlock exists.

In the event of such deadlock arising, the Trustees shall meet for the purpose of agreeing upon an impartial umpire to break such deadlock by deciding the dispute in question. In the event of the inability of the Trustees to agree upon the selection of such impartial umpire within thirty (30) days, then, on the petition of either group of Trustees, the District Court of the United States where

7

the Fund maintains its principal office shall appoint such impartial umpire. Such impartial umpire shall immediately proceed to hear the dispute between the Trustees and decide such dispute, and the decision and award of such umpire shall be final and binding upon the parties. The reasonable compensation of such umpire and the costs and expenses (including, without limitation, attorneys' and reporter fees) incidental to any proceedings instituted to break a deadlock shall be paid by the Trust Fund.

Such Impartial Umpire shall have no power to add to, subtract from, or modify any of the terms of this Agreement and Declaration of Trust or the Plan.

**Section 3.  ACCEPTANCE OF TRUSTEESHIP.**  The Trustees shall immediately meet and sign this Agreement and Declaration of Trust which establishes the Pension Fund. The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and act in such capacity in accordance with the provisions of this Agreement and Declaration of Trust. Any person duly appointed a Successor Trustee, immediately upon his acceptance in writing of the terms of the Agreement and Declaration of Trust, shall be vested with all the property, rights, powers and duties of a Trustee hereunder.

The term of any Trustee absent for three (3) consecutive meetings of the Board of Trustees or a Committee thereof and any combination of Committee and Board meetings shall automatically terminate and the organization appointing such Trustee shall designate some other person as Successor Trustee to complete said Trustee's term. The Board of Trustees may waive the requirements of this paragraph upon good cause shown.

The term of any Trustee may be terminated by the Board of Trustees for cause deemed sufficient by said Board, provided at least eleven (11) members of the Board of Trustees vote in favor of said termination. Upon such termination the party appointing such terminated Trustee shall designate some other person as Successor Trustee to complete said Trustee's term.

**Section 4.  TERM OF TRUSTEES.**  Each Trustee above-named, and each Successor Trustee, shall continue to serve as such until his death, incapacity, resignation or removal. An Employer Trustee may be removed and replaced by a Successor Employer Trustee at will by the Association which designated him, and Union Trustees may be removed and replaced by Successor Union Trustees at will by the District Council appointing them.

**Section 5.  FORM OF NOTIFICATION.**  In case any Union Trustee shall be removed, replaced, or succeeded, a statement in writing by the Secretary of the District Council taking such action shall be sufficient evidence of the action taken by the District Council. In case any Employer Trustee shall be removed, replaced or succeeded, a statement in writing by the President of the Association shall be sufficient evidence of the action taken by the Association. Any resignation by the Trustee shall be by registered mail addressed to the office of the Fund.

**Section 6.  VACANCIES.**  It is the intention of the parties hereto that the Trust Fund shall at all times be administered by an equal number of Employer Trustees and Union Trustees, but until the appointment and acceptance of a Successor Trustee or Trustees, the remaining Trustees shall

8

have full power to act, subject, however, to the strictures contained in Article VIII, Section 3A of this Trust Agreement.

**Section 7. INSURANCE**. The Trustees are authorized by this Trust Agreement to purchase insurance for the fiduciaries of the Plan or for the Plan itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, provided, however, that such insurance must permit recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary.

**Section 8. BONDING**. Every fiduciary of the Plan and Plan official who handles funds or other property of the Plan shall be bonded in accordance with the requirements of Section 412 of ERISA.

## ARTICLE IV

### POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES AND OTHER PERSONS

**Section 1. GENERAL**. The Trustees shall discharge their duties with respect to the Plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of:

(a)   Providing benefits to Participants and their beneficiaries;

(b)   Defraying reasonable expenses of administering the Plan:

1.   With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

2.   By diversifying the investments of the Plan so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so, and

3.   In accordance with this Trust Agreement and other documents and instruments covering the Plan insofar as such documents and instruments are consistent with the provisions of Title I of ERISA.

The Trustees shall receive Employer contributions, investment income, and any other money or property due to or belonging to the Fund and hold, manage and protect them in Trust for the uses and purposes set forth herein. The Trustees shall have general supervision of the operating of the Fund and shall conduct the business and activities of the Fund in accordance with this Trust Fund and applicable law.

**Section 2. LIABILITY OF TRUSTEES**. Each Trustee shall use reasonable care to prevent a co-Trustee from committing a breach of fiduciary duty and the Trustees are expressly authorized

9

by this Trust Agreement to allocate specific responsibilities, obligations or duties among Trustees, in which event a Trustee to whom certain responsibilities, obligations or duties have not been allocated shall not be liable, either individually or as a Trustee, for any loss resulting to the Plan arising from the act or omission on the part of another Trustee to whom such responsibilities, obligations or duties have been allocated.

No Trustee shall be liable or responsible for a breach of fiduciary responsibility of another fiduciary with respect to the Plan except as such limitation of liability is not permitted by Section 404 of ERISA and except in the following circumstances:

(a)    If he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(b)    If by his failure to comply with his obligation to discharge his duties with respect to the Plan solely in the interest of the participants and beneficiaries thereof as provided herein in the administration of his specific responsibilities which gave rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(c)    If he has knowledge of a breach by such other fiduciary unless he makes reasonable efforts under the circumstances to remedy the breach.

If an Investment Manager or Managers have been appointed herein, no Trustee shall be liable for the acts or omissions of such Investment manager or managers or be under obligation to invest or otherwise manage any asset of the Plan which is subject to the management of such Investment Manager.

Nothing in this Trust Agreement shall preclude a Trustee or other fiduciary from purchasing insurance to cover liability for a breach of fiduciary responsibility from and for his own account, nor shall anything herein preclude an Employer or an Employee Organization from purchasing insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with respect to the Plan.

So long as the Trustees discharge their duties in accordance with the requirements of Section I of this Article:

(a)    The Trustees shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in writing, but may accept the same as conclusive evidence of the Trust and accuracy of the statements therein contained.

(b)    Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

(c)    The Trustees shall not be liable in any respect for the failure to collect delinquent

10

contributions when such failure is occasioned by an Employee's lack of timely, reasonable notice of such delinquency or failure or refusal to cooperate with the Trustees, the Administrator or legal counsel in the efforts to collect such delinquent contributions.

Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon:

(a)     That, at the time of the delivery of said instrument, the Trust was in full force and effect,

(b)     That the instrument was executed in accordance with the terms and conditions of this Agreement, and

(c)     That the Trustees were duly authorized and empowered to execute the instrument.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions. Acting on the advice of counsel shall be prima facie evidence that the Pension Trustee or Trustees have acted in good faith.

The Trustees may employ and seek advice from a recognized actuarial consultant in connection with the delayed basis upon which pension and retirement payments may be made consistent with the sound administration, protection and maintenance of the Pension Trust, and shall be fully protected in acting and relying upon such advice.

**Section 3. PROPERTY AND SERVICES.** The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel and investment counsel, administrative, accounting, actuarial, clerical and other agents or employees as in their discretion they may find necessary or appropriate in the performance of their duties; and to pay the reasonable expenses or compensation therefor; and to delegate to any Agents or Employees such duties as they consider appropriate, provided, however, that it is the express intent of this Agreement and the parties thereto that legal counsel retained by the Trustees shall not be fiduciaries with respect to the plan.

**Section 4. CONSTRUCTION OF AGREEMENT.** The Trustees shall have power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any lawful construction adopted by the Trustees in good faith shall be binding upon the Union, the Association, the Employers and the Employees and their families, dependents, beneficiaries and/or legal representatives.

**Section 5. GENERAL POWERS.** The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a)     To establish and administer a Pension Plan on behalf of the Employees referred to

11

in this instrument.

(b)   To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust Fund and to do all acts as they, in their discretion, may deem necessary and advisable.

(c)   To compromise, settle, arbitrate, and release claims or demands in favor of or against the Trust Fund or the Trustees on such terms and conditions as the Trustees may deem advisable.

(d)   To establish and accumulate as part of the Trust Fund a reserve or reserves adequate, in the opinion of the Trustees, to carry out the purposes of such Trust.

(e)   To pay out of the Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect of the Fund or any money, property or securities forming a part thereof.

(f)   To receive contributions or payments from any source whatsoever to the extent permitted by law.

(g)   To invest and reinvest the Pension Fund in any type of investments that are legal for Trust Funds in the State of Illinois, and to take any and all action with respect to holding, buying, selling, exchanging such investments, in their own name or in the name of their nominee, as they in their sole discretion may deem appropriate and necessary, provided that no investments shall be made in any security of whatever nature or kind of any Employer, and provided that such activities are in strict compliance with Section 406 of ERISA and Section 13 of this Article.

(h)   In their discretion and to the extent they deem it wise, beneficial or necessary to appoint a bank or banks or trust company or trust companies to be designated as "Corporate Trustee," and to enter into and execute a trust agreement or trust agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund, with such other provisions incorporated therein as may be deemed desirable in the Trustees' sole discretion for the proper management of the Pension Fund and upon such execution to convey and transfer to such Corporate Trustee any assets of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law and to the extent that such investments are legal for Trust Funds in the State of Illinois. The Trustees shall be forever released and discharged from any responsibility or liability with respect to any assets which they may convey to such Corporate Trustee.

(I)   To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

12

(j)    To establish an escrow bank account or accounts to the extent deemed necessary in their discretion pending adoption of a Pension Plan.

(k)    To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective of enabling the Employees to obtain pension benefits in the most efficient and economical manner.

(l)    The Trustees shall have the power, in their sole discretion, except as provided in Article III, Section 1 hereof, to invest and reinvest the principal and income of the Trust Fund in such securities, common and preferred stock, mortgages, notes, real estate or other property as shall be legal for investments by Trustees in the State of Illinois, and may sell or otherwise dispose of such securities or property at any time and from time to time as they may deem proper; provided, however, the Trustees may in their sole discretion, invest the Trust Fund or any part thereof in retirement annuity contracts, retirement income contracts, group contracts and such other forms of contracts which are issued by legal reserve life insurance companies authorized to do business in the State of Illinois, as may be selected by the Trustees, for the purpose of furnishing all or a part of the benefits provided under this Trust.

(m)    The Trustees are hereby exclusively authorized and empowered to construe, interpret and apply the terms and provisions of this Trust Agreement, provided that such construction, interpretation, and application are consistent with all applicable laws and regulations.

(n)    The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations to implement this agreement which they deem necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms of this Agreement, and the Collective Bargaining Agreement creating the Fund. All rules and regulations adopted by majority action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all parties dealing with the Trust and all persons claiming any benefits hereunder.

(o)    The Trustees are hereby empowered to enter into a reciprocal agreement with any other Pension Fund relating to the contributions to be made by an Employer for any covered employee during periods when such employee is engaged in performing work in the geographical area in which such other Pension Fund is operative.

(p)    The Trustees are also empowered to compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage or undertaking due or owing from or to the Trust Fund on such terms and conditions as the Trustees may deem advisable.

**Section 6.  REASONABLE COMPENSATION OF TRUSTEES**.  In the performance of their duties with the Plan, the Trustees may be reimbursed for reasonable expenses properly and

13

actually incurred, including, without limitation, attendance at meetings and other functions of the Board of Trustees or its Committees or while on business of the Board of Trustees, attendance at institutes and educational conferences, seminars or workshops for or on behalf of the Fund, except that any person so serving who already receives full-time pay from an Employer or an Association, whose employees are participants in the Plan, or from an employee organization whose members are participants in such Plan, may receive compensation from such Plan for other than reimbursement of expenses as aforesaid, only in accordance with the provisions of ERISA and any rules or regulations promulgated pursuant thereto, as the same may be interpreted and construed by any Court or agency of competent jurisdiction.

All proper and necessary expenses incurred by any Trustee, including without limitation, organizational expenses and cost of defense in litigation arising out of the Trusteeship of this Fund, shall be paid out of the Trust Fund.

**Section 7. PROCEDURE FOR ESTABLISHING AND CARRYING OUT FUNDING POLICY.** The Trustees shall at a meeting duly called for the purpose, establish a funding policy and method which satisfies the requirements of Part 3 of Title I of ERISA and shall meet annually at a stated time of the year to review such funding policy and method and the reasons therefor shall be recorded in the minutes of the Trustees' meetings.

**Section 8. DUTY TO COOPERATE.** All Trustees, all directors, officers, employers, employees/participants or other representatives of any Employer Association or Union party to this Trust Agreement shall be required to assist and cooperate with authorized representatives of the Fund, it's attorneys, auditors, and other authorized representatives in the prosecution of claims for or against the Fund.

Specifically, an Employer shall provide to the Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the following information:

(a)     All cash disbursements journals, general ledgers, or other documents, including check registers or canceled checks if necessary, showing cash disbursements.

(b)     All individual payroll records including certified payrolls where required on particular projects, including any applicable W-2's/W-3's.

(c)     All time records which are the basis of the above-mentioned payroll records.

(d)     All state unemployment tax returns.

(e)     All union or fringe benefit fund reports showing contributions paid to all entities or employees for fringe benefits or dues.

(f)     All other relevant records which would tend to show the Employer's compliance with the terms of the Trust, including, if requested, records of project locations and records showing particular projects on which employee time has worked.

14

Further, in the event no time records or records of hours worked are available which indicate whether such hours are straight time or overtime, all hours paid shall be deemed to have been paid at straight time for the purpose of computing contributions owed.

**Section 9.   COMMITTEES OF THE BOARD OF TRUSTEES.**   The Trustees are empowered to appoint committees of the Board of Trustees as follows:

(a)   Authority to Create Committees.  The Board of Trustees may appoint committees, including but not limited to, an Executive Committee, Claims Committee, Finance and Investments Committee and a Delinquent Contributions Committee by resolution or written instrument of the Board of Trustees.

(b)   Appointment of Committee Members.  Each Committee shall consist of an equal number of Employer and Union Trustees, appointed by the Chairman of the Board of Trustees and subject to removal by the Board of Trustees.  A Committee member may resign by serving copies of his resignation upon all of the members of the Board of Trustees.  There shall be a written acceptance of the Committee position by the Trustee.

The Chairman of the Board of Trustees shall designate the person to serve as Chairman of each Committee and such Chairmen shall serve a two-year term.  Upon expiration of the term of office of a Chairman of a Committee who was selected from the Employer Trustees, his successor shall be named from among the Union Trustees if so requested by the Union Trustees.  Upon expiration of the term of office of a Chairman of a Committee who was selected from the Union Trustees, his successor shall be named from among the Employer Trustees if so requested by the Employer Trustees.

(c)   Executive Committee.  The Trustees may appoint an Executive Committee which will supervise the operation of the Fund between meetings of the Board.  It shall formulate general or specific policies for consideration by the Board.  It shall direct and advise the agents and employees of the Fund between meetings of the Board; it will take no action directly contrary to any Resolution or written instrument of the Board or in any area within the express authority of any other Committee of the Board of Trustees; it shall avoid action on other than routine or minor matters.  It shall see that its actions become part of the minutes of the next meeting of the Board of Trustees by ratification by the Board of Trustees.  The Executive Committee shall also perform such other functions, duties and responsibilities as may be delegated or assigned to it by the Board of Trustees, to the extent permitted by law.

(d)   Claims Committee.  The Trustees may appoint a Claims Committee which shall formulate rules and procedures for the processing of applications for, and the determination of payment of, benefits and make appropriate reports and recommendations on these subjects to the Board.  The Claims Committee is authorized to examine any application for benefits with regard to eligibility and

15

amount thereof (to the extent that determination of amount does not rest with an insurance carrier) and make appropriate determination with respect thereto. It shall conduct reviews of denials of claims in accordance with the established claim review procedures of this Fund.

(e)     Finance and Investment Committee. The Finance and Investment Committee shall review the investment policies of the Trustees and the activities of any Investment Managers which may have been appointed by the Trustees. It shall make appropriate recommendations to the full Board of Trustees on any matter entrusted to it.

(f)     Delinquent Contributions Committee. The Delinquent Contributions Committee shall formulate policies and procedures in regard to the collection of delinquent payments and contributions due the Fund. It shall collaborate with counsel and other agents of the Fund, in the administration of such policies and procedures and make appropriate reports and recommendations to the Trustees. It may authorize legal actions to collect accounts, to the extent that the Board of Trustees has not provided other authorization or procedures with respect to the initiation of such legal action.

**Section 10. APPOINTMENT OF EXECUTIVE ADMINISTRATOR.** The Trustees may employ or contract for the services of a person to be known as "Executive Administrator" who shall, under the direction or delegation by the Trustees or any appropriate committee of the Trustees, perform all or any part of these or other functions; administer the office or offices of the Fund and of the Trustees; coordinate and administer the accounting, bookkeeping and clerical services; provide for coordination of actuarial services; prepare or have prepared (in cooperation where appropriate with an actuary, attorney, insurance company, or accountant) all reports or other documents to be prepared, filed or disseminated by or on behalf of the Fund in accordance with the law; assist in the collection of contributions; perform such other duties or services as may be assigned, delegated or directed or contracted by or on behalf of the Trustees; be the custodian of all documents and other records of the Fund and of the Trustees.

**Section 11. BOOKS OF ACCOUNT.** The Trustees shall keep true and accurate books of accounts and records of all their transactions, which shall be audited as provided herein. Such audits shall be available at all times for inspections by the Union and the Employers at the principal office of the Fund.

**Section 12. EXECUTION OF DOCUMENTS.** The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees, or the Executive Administrator to execute any notice or other instrument in writing and all persons, partnerships, corporations, or associations may rely thereupon that such notice or instrument has been duly authorized and is binding upon the Fund and the Trustees.

**Section 13. DEPOSIT AND WITHDRAWAL OF FUNDS.** All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by such Trustees as are authorized in writing by the Trustees to sign such checks.

16

Except as hereinafter provided, no check shall be valid unless signed by two persons, of whom one shall be a Union Trustee and one an Employer Trustee.

The Employer Trustees shall designate the names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate the names of any Union Trustee who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an Employee of the Trust to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for such purpose.

**Section 14. MERGER WITH OTHER FUNDS.** In addition to any of the powers herein granted, the Trustees are authorized and empowered to merge the Trust with any trust of any other pension fund, upon such terms and conditions as they deem advisable, and as part of said merger, to turn over to the Trustees of the merged pension trust all of the assets and property of this Pension Trust, or to receive the assets and the property of any other pension trust, provided, however, that the Trust which survives any such merger shall be administered by an equal number of Employer representatives and Employee representatives and shall be limited to providing pension and retirement benefits to employees; provided further, that to the extent determined applicable by the Pension Benefit Guaranty Corporation, such merger shall be effected only in compliance with the substantive provisions of Section 208 of ERISA, to-wit, that each participant in the Plan will (if the Plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan has then terminated). In the event that the Trustees, pursuant to the powers granted to them by this article, shall have entered into an agreement to merge with any other pension trust and pursuant thereto shall transfer the assets and property of this Trust to another pension trust, they shall thereafter continue to function and this Pension Trust shall continue in existence until such time as the terms and conditions of the merger agreement have been complied with and the Trustees shall have received any necessary approval from the Internal Revenue Service and the Pension Benefit Guaranty Corporation regarding said merger, at which time the Trustees shall be discharged from further obligation.

**Section 15. RECIPROCITY AGREEMENTS.** The Trustees may, in their sole discretion, enter into such reciprocity agreement or agreements with other Pension Funds as they deem to be in the best interest of the Trust Fund, provided that any such reciprocity agreement or agreements shall not be inconsistent with the terms of this Trust Agreement or the collective bargaining agreements or other written agreements under which Trust Agreement is maintained.

**Section 16. PROHIBITED TRANSACTIONS.** Notwithstanding any of the foregoing or any other provision of this Agreement, in no event may the Trustees or any fiduciary of the Plan engage in "prohibited transactions" as defined by ERISA or any other transaction subsequently declared as prohibited transactions by any court or agency of competent jurisdiction or by subsequent amendments to ERISA except as specifically permitted by law.

In addition, no fiduciary of this Plan and Trust may act for or otherwise represent a party

17

dealing with the Plan, Fund or Trustee in any Plan, Fund or Trustee transaction or matters pertaining to the Plan, Fund or Trustee, nor may a fiduciary receive from any party dealing with the Plan, Fund or Trustee any consideration that in any way pertains to such party's dealings with the Plan, Fund or Trustee.

## ARTICLE V

## CLAIMS REVIEW PROCEDURE

**Section 1.  CLAIMS REVIEW.**  In accordance with the requirements of Section 503 of ERISA and regulations issued pursuant thereto by the Secretary of Labor, the following procedure shall apply in the event a claim is denied:

(a)    Filing of a Claim for Benefits.  For purposes of this Section, a claim is a request for a Plan Benefit by a participant or beneficiary of the Plan, hereinafter referred to as the "Claimant."  A claim is filed when the requirements of the claim filing procedure of the Plan, as established by the Administrator and approved by the Trustees have been met.  In the event no procedure has been established, a claim shall be considered filed when a written or oral communication is made by the Claimant or the Claimant's authorized representative, which is reasonably calculated to bring the claim to the attention of either a member of the Board of Trustees or the Administrator or any other person or body to which claims for benefits under the Plan customarily have been referred.

(b)    Notification to Claimant of Decision.

(1)    If a claim is wholly or partially denied, notice of the decision meeting the requirements of paragraph (c) below shall be furnished to the claimant within a reasonable period of time as established by the Trustees, the claim shall be deemed denied for the purposes of proceeding to the Review stage set forth in paragraph (d) below.

(2)    If notice of the denial of the claim is not furnished in accordance with subparagraph (b)(1) above and the claim has not been granted within a reasonable period of time as established by the Trustees, the claim shall be deemed denied for the purposes of proceeding to the Review stage set forth in paragraph (d) below.

(c)    Content of Notice.

(1)    The Plan Administrator shall provide to every claimant who is denied a claim for benefits, written notice setting forth in a manner calculated to be understood by the claimant:

A.    Specific reason or reasons for the denial.

18

B.     Specific reference to pertinent plan provisions on which the denial is based.

C.     A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

D.     An explanation of the Plan's Claim Review Procedure.

(d)   Review Procedure.  Within sixty (60) days of receipt by the Claimant of a written notification of denial of a claim, as provided in paragraphs (b) and (c) above, the Claimant or his duly authorized representative may:

(1)   Request a review upon written application to the Plan;

(2)   Review pertinent documents; and

(3)   Submit issues and comments in writing.

(e)   Decision on Review.

(1)   The Board of Trustees or a Committee designated by the Board shall conduct hearings to review denials of claims as hereinafter provided.

(2)   A decision by the Board or Committee shall be made promptly and as soon as possible following the hearing conducted by it, but no decision shall be rendered later than 120 days after receipt of a request for review.

(3)   The hearing provided for herein shall be held at a reasonable time and place as determined by the Board or Committee.  The Claimant or his representative may appear in person and may be represented by counsel.

(4)   The decision on review shall be by a majority vote of the Board or Committee, shall be in writing, shall include specific reasons for the decision written in a manner calculated to be understood by the claimant and shall include specific reference to the pertinent Plan provisions on which the decision is based.

**Section 2.  ARBITRATION**.  Any Claimant whose claim is denied by the Board or Committee shall have the right to invoke the arbitration procedure set forth below, provided he makes a request to do so in writing within sixty (60) days of being apprised of, or learning of, the Board's or Committee's action.

(a)   The Claimant and the Trustees shall each select an arbitrator.  The two arbitrators so selected shall select a third arbitrator, or if they are unable to agree upon such

19

selection within thirty (30) days, shall jointly petition the Circuit Court of Morgan County, Illinois, for the selection of the third arbitrator by a judge of said Court.

(b)     The questions for the arbitrators shall be whether, in the particular instance, the Claim Committee (1) was in error upon an issue of law, (2) acted arbitrarily or capriciously in the exercise of its discretion, or (3) whether its findings of fact were supported by substantial evidence.

(c)     The decision in writing of any two arbitrators shall be final and binding upon the Claimant and the Trustees.  The procedures specified in this Section shall be the sole and exclusive procedures available to a Claimant.

(d)     The arbitration shall be conducted in Morgan County, Illinois, in accordance with the usual rules governing procedure and admission of evidence in Courts of law in said County and State.

(e)     Each party to the arbitration shall pay his or its chosen arbitrator and shall bear equally the expense of the third arbitrator and all other expenses of the arbitration.

## ARTICLE VI

## CONTRIBUTIONS TO THE FUND

**Section 1.  BASIS OF CONTRIBUTIONS TO PLAN.**  In order to effectuate the purpose hereof, each Employer shall contribute to the Fund the amount required by any written agreement as defined herein between the Union or the Trust and the Employer.  The rate of contributions shall at all times be governed by the applicable written Agreement then in force and effect, together with any amendments, supplements or modifications thereto provided, however, that in the case of an Employer who is required to make contributions by reason of his being party to a written agreement other than a Collective Bargaining Agreement the amount of contribution required shall be identical to the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Local Union having jurisdiction over the geographical area in which the covered Employees perform work.  It shall not be a defense to any claim by the Trustees or an Employee for delinquent contributions from an Employer that such Employer had entered into an agreement with any employee purporting to waive the employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or other written agreement.  With respect to the amount of contributions required thereby no employee shall be permitted to contract or otherwise agree with or permit his employer to provide wage or benefit payments which do not conform to the aforesaid requirements and any such contract or agreement shall be null and void.

**Section 2.  EFFECTIVE DATE OF CONTRIBUTIONS.**  All contributions shall be made effective as required by the applicable written agreement and shall continue to be paid as long as the Employer is so obligated.

**Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.**
The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may, on reasonable notice, have an audit made by an independent certified public accountant or its representatives or such other person or persons as designated by the Trustees of all records of the Employer as described in Article IV, Section 8, in connection with the Employer's contributions and/or reports.

All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Fund forward unless given written authorization for variance by the Administrator. All such records shall be maintained for a period of ten (10) years unless earlier destruction of the same is authorized by the Trustees. The Trustees shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, after being requested to do so by the Trustees, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.

Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent personal liability for owners or partners who are not otherwise incorporated.

Each employer, by agreeing to be bound by the terms hereof, acknowledges and agrees that liquidated damages, as set forth in Section 7 hereinbelow, remain due and owing irrespective of the payment or not of the underlying contributions for which the liquidated damages were assessed, and failure to pay liquidated damages duly assessed shall constitute a default in payment pursuant to Section 6 of this Article.

**Section 4. BOND OR DEPOSIT.** The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees, the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), nor more than Fifteen Thousand Dollars ($15,000.00) or an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees, whichever is greater, secured by a corporate surety.

**Section 5. MODE OF PAYMENT.** All contributions shall be due and payable on the

21

fifteenth (15th) day of the month next following the calendar month in which eligible employees perform work with respect to which contributions are required. The time for payment may be extended by the Trustees by resolution, but in no event shall such extension exceed forty-five (45) days in accordance with applicable regulations issued by the Secretary of Labor pursuant to ERISA.

**Section 6. DEFAULT IN PAYMENT.** Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.

**Section 7. LIQUIDATED DAMAGES.** All Employers not paying contributions within fifteen (15) days from the date they are originally due, or the due date as extended as provided above, shall pay in addition to said contributions liquidated damages in the amount of ten percent (10%) of the delinquent contributions or Twenty-five Dollars ($25.00), whichever is greater, and said damages shall be paid with the delinquent contributions. Each Employer party to or otherwise bound by this Trust Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however, each Employer acknowledges these costs to be minimally ten percent (10%) of the delinquent contributions or Twenty-five Dollars ($25.00), whichever is greater, waiving the necessity of any additional proof thereof.

**Section 8. INTEREST.** Delinquent contributions shall bear interest at such rate as may have been established by the Trustees prior to determining the existence of the delinquency. Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest. The Trustees shall have the authority to waive the foregoing interest charge in the event the delinquent Employer executes a note or enters into an installment payment agreement providing for payment of said delinquency on such terms as acceptable to the Trustees under the circumstances.

**Section 9. COLLECTION COSTS.** Except as hereinafter provided in this Article, in the event an Employer becomes delinquent in his contributions, said delinquent Employer shall be liable for all reasonable costs incurred in the collection process including court fees, attorneys' fees, filing fees, and any other expenses actually incurred by the Trustees in the course of the collection process.

**Section 10. AUDITS AND THE COSTS THEREOF.** The Trustees shall have the authority to audit the records of the Employer as described in Article IV, Section 8, for the purposes of determining the accuracy of contributions to the Pension Fund. In the event it becomes necessary for the Trustees to file suit and/or otherwise retain legal counsel to enforce their authority to perform an audit, the Employer shall be liable for all reasonable costs incurred including court fees, attorneys' fees, filing fees, audit cost, and any other expenses actually incurred by the Trustees in the course of the action, without regard to whether the Employer did or did not owe delinquent contributions.

In the event an audit determines that there are no delinquent contributions due the Fund, other than in situations as noted in the above paragraph, the Fund shall pay the entire Audit Cost. In the event the audit determines that there are delinquent contributions due the Fund which were

22

intentionally not paid by the Employer, the entire Audit Cost shall be assessed against the Employer. Intentional non-payment shall include, but not be limited to, issuance of a check or other order for payment that is not honored by the bank or other institution on which it is drawn and shall include non-payment due to lack of funds on the part of the Employer.

In the event an audit determines that there are delinquent contributions which are unintentional, the Employer shall be assessed a proportion of the audit costs, if any, based upon a formula which shall be set from time to time by the Trustees in their discretion and reflected in the Minutes of the particular meeting where the formula is adopted or changed.

**Section 11.  REFUND OF CONTRIBUTION**.  Upon application by the payor, the Fund may refund to the payor contributions it has paid to the Fund in error, being contributions which were not due and payable to this Fund in the first place, provided (a) application for a refund is made to the Fund office within sixty (60) months of the date the same were paid to the Fund, and (b) it is determined by the Fund that the previous receipt and acceptance of said contributions by the Fund has not and will not create any reasonably foreseeable liability on the part of the Fund.

## ARTICLE VII

## PLAN OF BENEFITS

**Section 1.  BENEFITS.**  The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided based on what it is estimated the Fund can provide without undue depletion or excessive accumulation, provided, however, that the Trustees shall exercise such authority within the limits and in accordance with the requirements of Title I, Subtitle B, Part 2, or any other applicable provisions of ERISA and any applicable rules and regulations promulgated pursuant thereto.

The Board of Trustees shall draft procedures, regulations and conditions for the operation of the Plan, including by way of illustration and not limitation; condition of eligibility for Employees, procedure for claiming benefits, schedules of type and amount of benefits to be paid, and procedure for the distribution of benefits; provided, however, that all such rules and regulations adopted by the Trustees shall be general in their application and no special or particular treatment shall be accorded to any employee.

**Section 2.  RECIPIENT OF BENEFITS**.  Benefits may be provided in accordance with Section 1 of this Article only for Employees (as defined in ARTICLE I, Section 2, of this Agreement), their families and/or dependents.

**Section 3.  ELIGIBILITY REQUIREMENT FOR BENEFITS**.  The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their dependents.

**Section 4.  BASIS OF PROVIDING BENEFITS**.  Benefits shall be provided and

23

maintained by means of direct payment by the Trust to participants of the Plan or other beneficiaries in such amounts and in such manner as the Trustees shall, in their sole discretion, determine in accordance with Section 1 of this Article and all applicable laws and regulations.

**Section 5.  WRITTEN PLAN OF BENEFITS.**  The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees, subject, however, to such changes or modifications as shall similarly be specified in writing by appropriate resolutions of the Trustees.

**Section 6.  TREASURY APPROVAL.**  The Pension Plan adopted by the Trustees shall be such as will qualify for approval by the Bureau of Internal Revenue, U.S. Treasury Department, and as will continue as a qualified Plan, so as to insure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes.  The Trustees are authorized to make whatever applications are necessary with the said Bureau of Internal Revenue to receive and maintain approval of the Pension Plan.  In the event of failure of the Agreement and Declaration of Trust and the Pension Plan to receive or retain approval as a qualified Agreement and Declaration of Trust and Pension Plan under such provisions of Federal Law as are now in effect or as subsequently amended or legislated, or if such approval, or any ruling in connection therewith shall result in the Employers' contributions constituting taxable income to employees or if any ruling in connection therewith shall fail to secure the authorization for the deduction of the Employer contribution as a business expense to the Employer, the Pension Trustees shall make such changes as necessary to receive or retain such approval or authority for employers to deduct payments to the Pension Trust as a business expense without reporting such payments as taxable income to employees.

**Section 7.  AMENDMENT OF PLAN.**  The Plan may be amended by the Trustees from time to time provided that such amendments comply with all applicable laws, rules, and regulations and the purposes as set forth in this Agreement.  A copy of each amendment of the Plan shall be adopted and filed by the Board of Trustees as part of the records and minutes of the Board.

## ARTICLE VIII

## MEETING AND DECISION OF TRUSTEES

**Section 1.  OFFICERS OF TRUSTEES.**  The Officers of the Board of Trustees shall consist of a Chairman, Vice-Chairman, Secretary and Assistant Secretary, all of whom shall be members of the Board of Trustees.

Those persons holding said offices at the time of adoption of this instrument pursuant to the Agreement and Declaration of Trust adopted January 1, 1965, creating the Central Laborers' Pension Fund shall continue in said positions until the next annual meeting of the Board of Trustees as herein provided for.  All terms of office shall continue until successors are duly elected.

**Section 2.  MEETING OF TRUSTEES.**  The Trustees shall hold an annual meeting each year during the month of January and shall hold such other meetings as may be agreed upon from

24

time to time which shall be deemed regular meetings. At the annual meeting the Trustees shall select from among them a Chairman, Vice Chairman, Secretary and Assistant Secretary to serve for a period of two (2) years. All terms of office shall continue until successors are duly elected.

**Section 3. QUORUM.** Any action by the Trustees may be taken either at a meeting or in writing without a meeting. A quorum shall consist of a minimum of eight (8) Trustees, four (4) from the Union Trustees and four (4) from the Employer Trustees. Concurrence of a majority of the Trustees present shall be required for any action taken at a meeting at which a quorum is in attendance. On any action taken in which there was not unanimous concurrence, the individual votes of the Trustees shall be recorded in the minutes. Concurrence of a majority of all the Trustees shall be required for action taken without a meeting. In the event of a vacancy, the provisions of Article III, Section 6, shall apply. A quorum of a committee of the Board of Trustees shall be a majority of the members of the committee except as may be provided otherwise by law.

**Section 3A. EQUALIZED VOTING.** At any meeting of the Board of Trustees or Committee meeting, the number of votes of Employer Trustees and the number of votes of Union Trustees shall be equal. If one group of Trustees has fewer Trustees present than the other, the number of votes for the group with the fewer number of Trustees present shall be increased by a sufficient number of votes to equalize the number of votes of the other group of Trustees. The additional number of votes hereinbefore provided for shall be referred to as "Equalizing Votes" and they shall be cast by decision of a majority of the group of Trustees having the fewer Trustees present. In the event of a tie vote by said group of Trustees, such "Equalizing Votes" shall be deemed to have abstained from voting. In no event shall such "Equalizing Votes" be considered to have been cast by the absent Trustees.

**Section 4. MINUTES OF MEETING.** The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be provided to all Trustees.

# ARTICLE IX

# AMENDMENT OF TRUST AGREEMENT

**Section 1. AMENDMENT BY TRUSTEES.** This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees and annexed hereto. As to any amendment, the Trustees, in their sole discretion, shall have full power to fix the effective date thereof.

No amendment or change in this Trust Agreement nor amendments or changes in the pension contribution rates nor amendments or changes effecting benefit increases shall be voted upon by the Trustees until not less than thirty (30) days after such proposed amendment or change is first formally presented to the Board at a regular meeting thereof.

**Section 2. LIMITATION OF RIGHT TO AMENDMENT.** No amendment may be adopted which will alter the basic principles of this Agreement and Declaration of Trust; or will be

25

in conflict with the Collective Bargaining Agreements applicable hereto as such Agreements affect contributions to the Fund created hereunder, or will be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.

**Section 3. NOTIFICATION OF AMENDMENT.** Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

## ARTICLE X

## TERMINATION OF TRUST

**Section 1. BY THE TRUSTEES.** This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a written agreement or other obligation between any Employer and the Union or the Fund requiring contributions to the Fund.

**Section 2. BY THE PARTIES.** This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the parties creating same but only in strict compliance with the provisions of ERISA, any rules or regulations promulgated pursuant thereto and any other applicable laws or regulations.

**Section 3. PROCEDURE ON TERMINATION.** In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus in such manner as will in their opinion, best effectuate the purposes of the Fund; provided, however, that no part of the Corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefit of the employees, their families, beneficiaries, or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund. Under no circumstances shall any portion of the Corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any contributing Employer or Union.

**Section 4. NOTIFICATION OF TERMINATION.** Upon termination of the Fund in accordance with this Article, as governed by the applicable provisions of ERISA and any rules and regulations promulgated pursuant thereto, the Trustees shall forthwith notify the Union and each Employer and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding down the affairs of the Trust.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**Section 1. TERMINATION OF INDIVIDUAL EMPLOYERS.** An Employer shall cease

26

to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a written agreement or other legally enforceable obligation, to make contributions to this Pension Fund.

**Section 2. VESTED RIGHTS**. No employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any right, title or interest in or to the Fund or any property of the Fund or any part thereof except as may be specifically determined by the Trustees and required by ERISA.

**Section 3. ENCUMBRANCE OF BENEFITS**. No monies, property or equity, of any nature whatsoever, in the Fund, or policies or benefits or monies payable therefor, shall be subject in any manner by an Employee or person claiming through such employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void.

**Section 4. PAYMENTS TO PERSONS UNDER LEGAL DISABILITY**. In case any benefit payments hereunder become payable to a person under legal disability, or to a person not adjudicated incompetent but, by reason of mental or physical disability, in the opinion of the Board, is unable to administer properly such payments, then such payments may be paid out by the Board for the benefit of such person in such of the following ways as it thinks best, and the Board shall have no duty or obligation to see that the payments are used or applied for the purpose or purposes for which paid:

    (a)    Directly to any such person;

    (b)    To the legally appointed guardian or conservator of such person;

    (c)    To any spouse, parent, brother or sister of such person for his welfare, support and maintenance;

    (d)    By the Board using such payments directly for the support, maintenance and welfare of any such person.

**Section 5. SITUS**. This Agreement and Declaration of Trust is accepted by the Trustees in the City of Jacksonville, County of Morgan, State of Illinois, and such place shall be deemed the situs of the Trust Fund created hereunder. All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of such State. Jurisdiction and venue for all litigation under Federal statutes shall be in the Federal District Court for the Northern District of Illinois, Central District of Illinois or Southern District of Illinois.

**Section 6. CONSTRUCTION OF TERMS**.

    (a)    **Gender**. Wherever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine or neuter gender in all situations where they would so apply, and wherever

27

any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

(b)     <u>Determination of Benefits</u>. The Trustees possess the discretion to determine eligibility for benefits and to construe the terms of the Trust and/or plan governing benefits. It is also the intent of the drafters of this Trust that the decisions of the Trustees as to the granting or denial of benefits and the construing of terms of the Trust and benefit plan, are reviewed pursuant to an "arbitrary and capricious" standard by a reviewing court, as enunciated by the United States Supreme Court in <u>Firestone Tire and Rubber Company et al. v. Richard Bruch, 57 LW 4194 (Feb. 21, 1989).</u>

**Section 7.  CERTIFICATION OF TRUSTEE'S ACTIONS.**  The Chairman or Vice-Chairman and the Secretary or Assistant Secretary of the Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Fund or with the Trustees shall be fully protected in reliance placed on such duly executed document.

**Section 8. NOTIFICATION OF TRUSTEES.** The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

**Section 9.  SEVERABILITY.**  All provisions of this Trust Agreement are intended to comply with ERISA, the Labor Management Relations Act of 1947 as amended and all other applicable laws, rules, and regulations. However, should any provision of this Trust Agreement or of the Plan or rules and regulations adopted thereunder or in any collective bargaining agreement or written agreement be deemed or held to be unlawful or invalid for any reason, such facts shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal and/or invalid provision.

## ARTICLE XII

## CREATION OF ANNUITY PLAN

**Section 1. CREATION OF ANNUITY PLAN.** The Trustees shall establish and operate an Annuity Plan to be known as Central Laborers' Annuity Plan and all provisions and powers and duties of this Trust Agreement and Amendments thereto pertaining to a Pension Plan shall apply with equal force and effect to establishing, maintaining, and operating said Annuity Plan where appropriate.

## CREATION OF ANNUITY PLAN

**Section 1. CREATION OF ANNUITY PLAN.** The Trustees shall establish and operate an Annuity Plan to be known as Central Laborers' Annuity Plan and all provisions and powers and duties of this Trust Agreement and Amendments thereto pertaining to a Pension Plan shall apply with equal force and effect to establishing, maintaining, and operating said Annuity Plan where appropriate.

**Section 2. QUALIFIED PLAN.** The Central Laborers' Annuity Plan shall be a qualified plan in accordance with the requirements of the Internal Revenue Code so that all employer contributions thereto may be treated as a deduction for income tax purposes.

**Section 3. SEPARATE ENTITY.** The Central Laborers' Annuity Plan shall be a separate entity from Central Laborer's Pension Fund and all matters pertaining to said Annuity Plan including all monies, income, expenses, and records shall be kept and held separate and apart from Central Laborers' Pension Fund. The Board of Trustees of Central Laborers' Pension Fund shall adopt rules and regulations pertaining to the operation of Central Laborers' Annuity Plan and shall adopt by resolution from time to time such procedures as it may deem appropriate to facilitate maintaining and operating said Annuity Plan.

IN WITNESS WHEREOF, the Associations or Employers and the Union, by their undersigned authorized representatives have executed this instrument on the 27th day of April, 1999.

LABOR TRUSTEES                MANAGEMENT TRUSTEES

29

WHEREAS, the Board of Trustees of the Restated Agreement And Declaration Of Trust Of The Central Laborers' Pension Fund ("Trust") may, pursuant to Article IX, Section 1, amend the Trust; and

WHEREAS, the Trustees upon review of Article IV, Section 9, of the Trust Agreement have determined to clarify said Section;

NOW, THEREFORE, the Trustees amend Article IV, Section 9, by deleting subsection (d) and substituting therefor subsections (d) and (e) as follows:

(d)     Claims Committee.  The Trustees may appoint a Claims Committee which shall formulate rules and procedures for the processing of applications for, and the determination of payment of, benefits and make appropriate reports and recommendations on these subjects to the Board.

(e)     Appeal Review Committee. The Trustees may appoint an Appeals Review Committee. The Appeals Review Committee shall be responsible for the review of the appeals of all or certain categories of claims as delegated by the Trustees. The Trustees appointed to the Appeals Review Committee shall be empowered and authorized in their sole discretion to construe and interpret all Plan documents. The Appeals Review Committee's determination and construction adopted in good faith shall be binding upon all parties. It is the intent of this authorization that the decisions of the Appeals Review Committee to grant or deny benefits and its construction of the terms of the Plan documents shall be subject to subsequent review only under an "arbitrary and capricious" standard by a reviewing court, as enunciated by the United States Supreme Court in *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101 (1989).

This Amendment to the Trust Agreement is hereby adopted this _18_ day of _July_, 2005.

_____
Chairman

_____
Secretary

# AMENDMENT TO THE RESTATED AGREEMENT
## AND DECLARATION OF TRUST
### OF THE
## CENTRAL LABORERS' PENSION FUND

WHEREAS, the Board of Trustees of the Central Laborers' Pension Fund, may pursuant to Article IX, Section 1, amend the Restated Agreement and Declaration of Trust ("Trust"); and

WHEREAS, the Trustees, upon review of the Trust, have determined that it is necessary to amend the Trust; and

NOW, THEREFORE, the Board of Trustees hereby adopts the following amendments to the Trust:

1.     The Board of Trustees hereby amends Article I, Section 4, of the Trust which shall hereafter read as follows:

**Section 4.     ASSOCIATION.**   The term "Association" shall mean Western Illinois Contractors' Association (successor to Morgan County Contractors' Association); Associated General Contractors of Illinois; Southern Illinois Builders Association; Central Illinois Builders of AGC; and Illinois Valley Contractors Association.

2.     The Board of Trustees hereby amends Article III, Section 2, subsection (b), of the Trust which shall hereafter read as follows:

(b)     The Western Illinois Contractors Association shall appoint one (1) Employer Trustee; the Associated General Contractors of Illinois shall appoint four (4) Employer Trustees; the Central Illinois Builders of AGC shall appoint one (1) Employer Trustee; the Southern Illinois Builders Association shall appoint one (1) Employer Trustee; and the Illinois Valley Contractors Association shall appoint one (1) Employer Trustee.   These Employer Trustee appointments take into consideration the geographic area of the Pension Fund and a reasonable balance with reference to the building and heavy and highway segments of the construction industry.   Successor Trustees shall be appointed by the organization which made the original Employer Trustee appointment.

This amendment to the Trust is adopted and effective on this ___18th___ day of
___April___, 2011.

_____
Chairman

_____
Secretary

# AMENDMENT TO THE RESTATED AGREEMENT
## AND DECLARATION OF TRUST
## OF THE
## CENTRAL LABORERS' PENSION FUND

WHEREAS, the Board of Trustees of the Central Laborers' Pension Fund, may pursuant to Article IX, Section 1, amend the Restated Agreement and Declaration of Trust ("Trust"); and

WHEREAS, the Trustees, upon review of the Trust, have determined that it is necessary to amend the Trust; and

NOW, THEREFORE, the Board of Trustees hereby adopts the following amendments to the Trust:

1.      The Board of Trustees hereby amends Article IV, Section 8, of the Trust which shall hereafter read as follows:

**Section 8.      INTEREST.**   Delinquent contributions shall bear interest at such rate as may have been established by the Trustees prior to determining the existence of the delinquency. Trustees may determine and establish from time to time the appropriate interest rate for delinquencies and when the delinquencies shall commence to bear interest.   The Trustees shall have the authority to waive the foregoing interest charge consistent with their fiduciary obligations and Prohibited Transaction Exemption 76-1.

This amendment to the Trust is adopted and effective on this ___15th___ day of ___April___, 2013.

Chairman

Secretary

## AMENDMENT TO THE RESTATED AGREEMENT
## AND DECLARATION OF TRUST OF THE
## CENTRAL LABORERS' PENSION FUND

**WHEREAS**, the Board of Trustees of the Central Laborers' Pension Fund currently administers and maintains the Central Laborers' Pension Plan for the benefit of participants and beneficiaries;

**WHEREAS**, the right to amend the Restated Agreement and Declaration of Trust has been reserved by the Board of Trustees under Article IX, Section 1 of the Restated Agreement and Declaration of Trust, which right the Board of Trustees now desires to exercise.

**WHEREAS**, we the undersigned, being all of the Trustees and all of the persons entitled to notice of, to attend and to vote at meetings do hereby authorize, consent and agree that the following amendment shall be adopted.

**NOW THEREFORE**, the Board of Trustees hereby amends the Restated Agreement and Declaration of Trust by deleting Article V in its entirety and replacing it with the following:

### ARTICLE V

### CLAIMS REVIEW PROCEDURE

**Section 1. CLAIMS REVIEW.** All claims for benefits shall be determined in accordance with the rules and regulations of the Plan. The review of all claims for benefits shall be determined in accordance with the review provisions set forth in the rules and regulations of the Plan.

**Section 2. DISCRETION.** The Board of Trustees possesses the discretion to interpret and determine all questions regarding or relating to the rules and regulations of the Plan and the terms of this Agreement and Declaration of Trust. Further, all such determinations shall be final and binding, except to the extent that such determinations may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matter.

**IN WITNESS HEREOF**, this Amendment has been executed and shall be effective as of this 26th day of January, 2015.

Chairman                                    Secretary

_John F. Penn_                              _Jason P. Brewer_

**James L Van Winkle**

| | |
|---|---|
| **From:** | Jennifer Durbin <jdurbin@reynoldswathen.com> |
| **Sent:** | Wednesday, September 25, 2019 3:03 PM |
| **To:** | James L Van Winkle |
| **Cc:** | David Reynolds |
| **Subject:** | Danny Birkner |
| **Attachments:** | 09-25-19 letter to Attorney.pdf |

Please review the attached letter from Mr. Reynolds.

Thank you,

*Jennifer Durbin*

David T. Reynolds, PLLC
2200 East Parrish Avenue
Building C, Suite LL104
Owensboro, KY  42303
Phone: (270) 684-4540
Fax: (270) 685-0905

CONFIDENTIALITY NOTICE
Please be advised that this e-mail and any files with it are confidential attorney-client communications and may otherwise be priviledged or confidential and are intended solely for the individual or entity to whom they are addressed. If you are not the intended recipient, please do not read, copy or retransmit this communication but destroy it immediately. Any unauthorized dissemination, distribution, or copying of this communication is strictly prohibited.